597 P.2d 546

**STATE of Arizona, Appellee,**

v.

**Robert T. RENFROW, Appellant.**

No. 1 CA–CR 3522.

Court of Appeals of Arizona,
Division 1,
Department B.

April 24, 1979.

Rehearing Denied June 12, 1979.

Review Denied July 10, 1979.

John A. LaSota, Jr., former Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Joel M. Glynn, Deputy Public Defender, Phoenix, for appellant.

OPINION

JACOBSON, Judge.

The single question raised on this appeal is whether appellant's constitutional Fourth Amendment rights were violated when police officers conducted a warrantless inspection of the vehicle identification numbers (VIN's) on the truck he had driven to work to ascertain if it was stolen. Under the circumstances disclosed by the record we find no violation of constitutional rights and we accordingly affirm appellant's con-

victions for felony theft of a motor vehicle [1] and removing vehicle identification numbers.[2]

On the morning of December 13, 1977, ABC Datsun, an automobile dealership, reported to police that a new blue pick-up truck had been stolen from its lot. ABC Datsun had received information from one Wuthrick that appellant and others had stolen the truck by replacing its ignition with the ignition from another Datsun pick-up truck of somewhat similar color which appellant owned. Wuthrick lived in the same apartment complex as appellant and he wanted to earn a reward. Responding to the report, the police officers talked to Wuthrick who further advised them that he had been informed by appellant that he had replaced the new truck's vehicle identification number plates with those from his own Datsun and had also added to the new vehicle a camper top, bumpers, mirrors and Massachusetts license plates. ABC Datsun provided the officers with the stolen vehicle's nonconfidential VIN and its engine number. The nonconfidential VIN is found in two places on the vehicle, on the door post next to the driver's seat and underneath the hood. The engine number is located at a specified place on the engine. There is also a second, confidential VIN which is located at a generally undisclosed place on the vehicle.

Armed with this information and having informed themselves of the VIN's on appellant's own pick-up truck, the officers set out to find appellant and the vehicle in question. After an unsuccessful trip to appellant's residence they arrived at appellant's place of employment at a time when appellant was away on his employer's business and could not be reached.

The officers found the vehicle described to them in the employer's parking lot and preliminarily identified it as being stolen. It had Massachusetts license plates and the other external features referred to by Wuthrick and the auto dealer. The officers spoke with appellant's supervisor, who stated that the truck "seemed a lot newer than the one he [appellant] had been driving originally, and it was a different color."

The truck was not locked. The officers proceeded to open the door and the hood and checked the nonconfidential VIN plates. These matched the VIN of the vehicle owned by appellant. The officers then checked the engine number. This did not correspond with the engine number on appellant's own vehicle but did match the engine number of the vehicle stolen from ABC Datsun. The officers then contacted the police department's stolen auto detail which checked the confidential VIN. It corresponded with the confidential VIN of the stolen vehicle. The officers questioned appellant upon his return and he eventually admitted that he and others had stolen the truck from ABC Datsun.

Appellant contends on appeal that the police officers should have obtained a warrant to search or inspect the truck for its VIN's and that their failure to do so rendered the search invalid. Appellant further contends that any incriminating statements made by him were "fruit of the poisonous tree" and inadmissible as evidence under the rule of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The basic question before us has been many times presented to the federal courts.

In *Simpson v. United States,* 346 F.2d 291 (1965), a divided *en banc* panel of the Tenth Circuit held that an inspection for vehicle identification numbers was a search subject to the warrant requirement of the Fourth Amendment. The majority's conclusion in *Simpson* was, however, rejected by the Ninth Circuit Court of Appeals in *Cotton v. United States,* 371 F.2d 385 (1967). The *Cotton* court stated at 371 F.2d 393–394:

"We have no doubt that here, even if the mere opening of the door to look at the number was a search, it was a reasonable one. The agent had reliable information from the Las Vegas police that

---

1. In violation of former A.R.S. § 13–672 (see present A.R.S. §§ 13–1802 and 13–1803).

2. In violation of A.R.S. § 28–326.

the car was stolen, and it was entirely reasonable for him to check the car before sending out his inquiry. It is true that he could have obtained a warrant. And if he had found and used evidence that Cotton might have placed in the car, we would hold that he should have done so. But we are of the opinion that, when a policeman or a federal agent having jurisdiction has reasonable cause to believe that a car has been stolen, or has any other legitimate reason to identify a car, he may open a door to check the serial number, or open the hood to check the motor number, and that he need not obtain a warrant before doing so in a case where the car is already otherwise lawfully available to him."

The Sixth Circuit followed *Cotton* in *United States v. Graham,* 391 F.2d 439, *cert. denied,* 390 U.S. 1035, 88 S.Ct. 1433, 20 L.Ed.2d 294 and 393 U.S. 941, 89 S.Ct. 307, 21 L.Ed.2d 278 (1968). A three judge panel of the Fifth Circuit followed *Cotton* and *Graham* in *United States v. Johnson,* 413 F.2d 1396 (1969). On rehearing *en banc,* ten of the fourteen judges agreed that there was no search, or alternatively if there was a search, the search was under the circumstances reasonable. Three other judges concurred on the single ground that the search was reasonable and one judge dissented. 431 F.2d 441 (1970).

The Fourth Circuit Court of Appeals, in *United States v. Powers,* 439 F.2d 373, 375, *cert. denied,* 402 U.S. 1011, 91 S.Ct. 2198, 29 L.Ed.2d 434 (1971), stated that identification numbers "are, at the least, quasi-public information," and held that when the officer has a legitimate ground for checking the identification number, he is engaged in a reasonable search.

■ The foregoing authorities make it clear that an inspection at a place where officers are entitled to be which is reasonably predicated on apparently reliable information does not require a warrant. This prevailing federal rule has been recognized and applied by this court in *State v. Ray* (1 CA–CR 2672, filed October 10, 1978, petition for review granted November 28, 1978).

■ Focusing on the facts here it is clear that based upon the information which the officers received from Wuthrick and ABC Datsun they had a legitimate basis for checking the identification numbers on the vehicle which matched the description of the stolen pick-up. The record is somewhat less complete on the second issue but it appears that the officers communicated with a person in authority at appellant's place of business and there is a clear basis for inferring the consent of the employer to the presence of the policemen for the purposes of the inquiry and inspection.

■ The trial court, accordingly, did not err in denying appellant's motion to suppress. Appellant's convictions determined after submission of his case to the trial court, and the sentences thereon, are affirmed.

SCHROEDER, P. J., and OGG, C. J., concurring.