655 P.2d 808

**STATE of Arizona, Appellee,**

v.

**Gail Gardner STEIGER, Lewis Steiger and Delia Rebecca Steiger, Appellants.**

**Nos. 1 CA–CR 5454, 1 CA–CR 5455 and 1 CA–CR 5456.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 23, 1982.

---

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

Toci, Murphy & Beck by Richard A. Stewart, Prescott, for appellants.

## OPINION

CORCORAN, Acting Presiding Judge.

The sole issue presented by this appeal is whether appellants had a legitimate expectation of privacy in an area of a ranch leased by their father so as to entitle them to the Fourth Amendment protection of the United States Constitution from unreasonable searches and seizures. The state conceded in the trial court that the arresting officers had no probable cause to search the ranch and the question of probable cause to search is thus not before this court.

Following the trial court's denial of appellants' motion to suppress, the appellants submitted the question of their guilt or innocence to the trial court, sitting without a jury, based on the grand jury transcript, police reports, statements made by appellants to a Department of Public Safety (DPS) officer, and the transcript of testimony at the hearing on the motion to suppress. The trial court returned verdicts of guilty as to all appellants of possession of marijua-

na for sale, in violation of A.R.S. §§ 36–1002.06, 13–701, 13–702, and 13–801. Appellants filed a motion for new trial, asserting as their sole claim of error that the trial court erred in denying the motion to suppress. The trial court denied the motion for new trial.

The trial court suspended imposition of sentence as to appellant Delia Steiger for a period of two years, and she was placed on probation, with the condition that she perform sixty hours community service work under the direction of the probation officer. The trial court suspended imposition of sentence as to her brothers, Gail Steiger and Lewis Steiger, but for a period of four years, and they were placed on probation with the condition that they each serve nine months in the Yavapai County Jail. Appellants Lewis and Gail Steiger were released on their own recognizance pending determination of this appeal. Appellants timely filed notices of appeal.

The evidence submitted to the trial judge on stipulation, viewed in a light most favorable to sustaining the trial court's ruling on the motion to suppress and resolving all reasonable inferences in favor of the state, *State v. Acree,* 121 Ariz. 94, 588 P.2d 836 (1978), reveals that on Saturday, August 30, 1980, DPS Agent, Wayne A. Wright, and Yavapai County Sheriff Deputy Phil Quigley, seized approximately 800 pounds of marijuana from the Winter Camp area of the Matli Ranch located approximately 22 miles outside of Prescott. The officers arrested the Steigers at the same time.

The marijuana cache was discovered by Edward Webb, a visitor from Michigan, who owned 40 acres of land in the Williamson Valley area in close proximity to the Matli Ranch. Mr. Webb camped on his property in the summer and intended to build a house on it to retire. He was walking in the area a few days before the search to determine the availability of water. Mr. Webb entered a corral and barn area, which was later determined to be the Winter Camp at the Matli Ranch, and observed a large amount of what he believed to be marijuana in the barn hanging from horizontal string lines. He did not know who owned the property.

Mr. Webb contacted his realtor who in turn contacted the authorities. The realtor took Agent Wright and Deputy Quigley to Mr. Webb's camp. Mr. Webb told the officers he believed the barn contained marijuana but the only contact he had with marijuana was seeing it on television or a picture in a magazine. Friends had previously told him it looked like ragweed. Based on his experience, Agent Wright knew that marijuana did not look like ragweed. Mr. Webb took the officers to a fenceline from which only the roof of the barn could be observed. The fenceline was about a quarter to a third of a mile from the barn at what was later determined to be the Winter Camp. The officers discussed obtaining a search warrant, but concluded that they did not have probable cause to obtain a warrant. Therefore they decided to move closer to the barn in order to observe the area. When the officers crossed the fenceline, they did not know who owned the property or who might be on it.

The officers walked through the fence, and as they approached they did not hear any noises in the area of the barn, nor did they see any persons or detect any unusual odors. The windows of the barn were covered with burlap so that the officers could not see inside. There was a fence enclosing the corral area and the barn, and Agent Wright opened the gate to the fence and he and Deputy Quigley walked through. As they approached the barn, they observed a dog, and they saw appellant Gail Steiger who asked what they were doing there. Agent Wright walked around the corner of the barn, looked through an open doorway to the barn and observed marijuana hanging inside the barn. As he stepped into the doorway of the barn he saw appellants Lewis and Delia Steiger processing the marijuana.

The marijuana in the barn was seized by the officers, and, with the assistance of the appellants, loaded for transport to Prescott. Deputy Quigley also located some marijua-

na in one of the calving pens, and that marijuana also was seized. Agent Wright testified that they seized approximately 800 pounds of marijuana, between 2500 to 3000 plants four to seven feet high, from the Winter Camp area.

The father of appellants testified at trial that the Matli Ranch is approximately 17½ sections, 10 deeded, and the remaining leased from the state. The boundaries of the entire ranch are fenced. Additionally, there are approximately 11 different pastures on the ranch which are fenced.

The Matli Ranch is in the possession of and operated by the father, who, with two inactive partners, has a lease option of ⅔rds of the ranch. A Matli widow retains a ⅓rd interest in the ranch. She, by agreement with the father, operates on a specific ⅓rd portion of the ranch which does not include Winter Camp. The Matli brothers retained 32 specific acres of the ranch, including the ranch headquarters, when they leased it to the father.

The roads leading into the ranch are fenced, and have locked gates. Seven persons have keys to those gates including the Matlis, the father, and appellants Gail and Lewis Steiger. The Winter Camp is located in the southwesterly portion of the ranch and consists of a corral approximately 150 feet long and 75 feet wide, a barn 15 feet wide and 30 feet long, a row of calving pens, and a line shack. The Winter Camp area is used during the calving season which generally occurs in the spring of each year. Other than at that time, unless it is specifically authorized by the father, no one has authority to be at the Winter Camp area. Access to the Winter Camp is gained by two roads both of which originate at the ranch headquarters.

There are no full time employees on the ranch. All ranching work has been done by appellants' father, and appellant Gail Steiger, with assistance from the Matli brothers. Appellant Lewis Steiger had an agreement with his father whereby he could cut wood on a regular basis and pay the ranch "so many dollars a cord." Lewis Steiger was authorized to allow other people under his supervision onto the ranch to cut wood. However, the father did not permit anyone to cut wood at the Winter Camp. Lewis also from time to time assisted appellant Gail Steiger and his father with ranching chores, and Gail sometimes assisted Lewis with woodcutting.

Both Gail and Lewis Steiger had keys to the gates on the ranch, and were informed by their father when he had authorized other persons to be on the ranch. A few people were permitted to cut wood and one trapper to trap coyotes. They would pick up keys at the Matli house. Gail and Lewis Steiger had the authority to evict any persons other than those authorized by their father. Testimony further revealed that trespassers were seen on the ranch only rarely, and that other persons who retained ownership interests in the ranch, including the Matlis, did not go to the Winter Camp area except during calving season. Appellant Delia Steiger went to the ranch infrequently with her father, and was not employed on the ranch, nor did she have authority from her father to evict trespassers from the ranch.

Finally, the father testified that while he had authorized his three children to be on the ranch on August 30, 1980, to cut wood approximately two to three miles from the Winter Camp area, he had not authorized them to be in the Winter Camp area or to possess marijuana there on the day of the search. The cattle closest to the Winter Camp were pastured three or more miles away.

Based on these facts, the appellants contend that they had a legitimate expectation of privacy at the Winter Camp area, and that the trial court erred in denying their motion to suppress.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable search and seizures." In order to have a protected Fourth Amendment interest, a criminal defendant must have a "legitimate expectation of privacy in the invaded place." *Rakas v. Illinois,* 439 U.S. 128, 141, 99 S.Ct. 421, 430, 58

L.Ed.2d 387, 401 (1978). The inquiry into what constitutes a legitimate expectation of privacy involves two questions. "The first is whether the individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy'." *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226 (1979), *quoting Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967). "The second question is whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as reasonable'." *Id.*

It is clear that the appellants, by their conduct, exhibited an actual and subjective expectation of privacy. They went to a secluded area of the ranch, on which they had never observed trespassers, and which was not normally used except during the spring months. The area was accessible from outside the ranch on roads on which gates were located which were kept locked. Appellants covered the windows of the barn in which the majority of the marijuana was located with burlap. Thus, it is obvious that appellants, by their conduct, exhibited a subjective expectation of privacy. The more difficult question remaining is whether their subjective expectation of privacy constitutes a "legitimate" expectation of privacy, i.e., "one that society is prepared to recognize as reasonable."

The legitimacy of the expectation of privacy may be determined in part "by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas,* footnote 12, 439 U.S. at 143, 99 S.Ct. at 430, 58 L.Ed.2d at 401. However, the determination may not be based solely on property concepts. Thus a person may "have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." *Rakas,* 439 U.S. at 142, 99 S.Ct. 430, 58 L.Ed.2d at 400. One's legitimate presence on the premises, without a recognized property interest is not irrelevant to the determination of the legitimacy of his ex-

pectation of privacy, but it is not a controlling factor. *Rakas v. Illinois, supra, Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Finally, the fact that a person is charged with a crime involving possession does not automatically confer a legitimate expectation of privacy. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). A person charged with a crime of possession "may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated." 448 U.S. at 85, 100 S.Ct. at 2549, 65 L.Ed.2d at 623. Thus, the courts are required to look at the totality of the circumstances to determine whether a criminal defendant has a legitimate expectation of privacy. *State v. Johnson,* 132 Ariz. 5, 643 P.2d 708 (App. 1981).

The trial court could not exclude evidence obtained without a search warrant unless it finds that an unlawful search or seizure violates the appellants' own constitutional rights. The appellants' Fourth Amendment rights could have been violated only if the challenged search and seizure invaded *their* legitimate expectation of privacy rather than that of a third party. The appellants lack standing under the Fourth Amendment to suppress the marijuana seized on their father's ranch. *United States v. Payner,* 447 U.S. 727, 731, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468, 474 (1980).

From the facts of this case, it is clear first that appellants had no ownership interest in the ranch. While Lewis and Gail Steiger worked on the ranch performing various tasks, they were neither owners nor lessors of the ranch, and they worked there only under a specific grant of authority from their father. Delia Steiger was an invitee of her brothers and can claim no greater rights than they. Appellants make much of the fact that Lewis and Gail Steiger both had keys to the locks on the gate and were authorized to exclude trespassers from the property. *See Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). However, we find that the most telling factor in this case is that

appellants had no authority from their father to be in the Winter Camp area on the day in question. Their father had specifically authorized them to be on the ranch for the purpose of cutting wood approximately two to three miles from the Winter Camp area. Thus, appellants were not legitimately on the premises in which they claim they had a protected interest. We find that their unauthorized presence in the Winter Camp area does not give rise to a legitimate expectation of privacy within the meaning of the Fourth Amendment to the United States Constitution.

This opinion should not be construed as a "ranch exception" to the Fourth Amendment. The characterization of the land as a ranch is not determinative of the issues of this case in any way, but only incidental. The record reflects that as to the operation of the ranch the appellants and their father had a business-like relationship. The appellants were to be on the ranch only when the father indicated they should be on the ranch, where they should be, and what they should be doing. At the time of the search, the children were on the ranch with the consent of the father at an appropriate time, but they were at a place where they were not authorized to be and doing things that they were not authorized to do.

The judgments and sentences are affirmed.

GRANT and EUBANK, JJ., concur.