947 P.2d 880

**The STATE of Arizona, Appellee,**

v.

**Allen Michael WEINSTEIN, aka Allen Michael Weistein, Appellant.**

**No. 2 CA–CR 96–0580.**

Court of Appeals of Arizona, Division 2, Department B.

June 19, 1997.

Review Denied Dec. 16, 1997.

Grant Woods, Attorney General by Paul J. McMurdie and Robert S. Golden, Phoenix, and Donna J. Lam, Tucson, for Appellee.

Robert Truman Hungerford, Tucson, for Appellant.

## OPINION

ESPINOSA, Judge.

Appellant Allen Michael Weinstein was convicted of fourteen drug-related offenses and sentenced to concurrent, presumptive prison terms, the longest of which was five years. On appeal, Weinstein challenges the trial court's denial of his motion to suppress heroin found in a package he attempted to ship to San Francisco and other narcotics found in his vehicle, shirt pocket, and home. For the reasons set forth below, we affirm.

### Facts and Procedural Background

In reviewing the trial court's denial of a motion to suppress, we consider the evidence presented at the suppression hearing in the light most favorable to upholding the ruling. *State v. Moore*, 183 Ariz. 183, 901 P.2d 1213 (App.1995). So viewed, the evidence showed the following. In October 1995, a man driving a new white Jeep Cherokee went to a Mail Boxes Etc. (MBE) store to send a package overnight to San Francisco. MBE employees suspected the package contained contraband because the customer had vacant eyes, looked disheveled and groggy, lacked coordination, and "appeared to be under the influence of something." They opened the package, found an envelope wrapped in plastic wrap, pulled back the wrap, and discovered "something in it that wasn't a letter." One of the employees notified MANTIS,[1] as was MBE's practice when employees suspected contraband was being shipped from their store.

Department of Public Safety detective James Oien responded to the MBE store and the employees asked him to remove the package if he found it contained contraband because they did not want it on the premises. Oien looked inside it and saw a black tarlike substance that smelled of vinegar, indicating the presence of heroin. He took the package and left the MBE employees an "undercover" phone number to give to anyone calling to inquire about its whereabouts. The first call came two days later, from a female who identified herself as Erin Gilmore, the addressee of the package. Police determined that Gilmore lived at the return address, although another name was listed on the package. A second caller inquired about "his package," and identified himself as "just Allen," refusing to give his last name. The signature line on the packing label appeared

---

1. The Metropolitan Area Narcotics Trafficking Interdiction Squad, or MANTIS, is a multi-agency narcotics task force.

to read "Allen Wested." Another message was recorded from a caller who identified himself as "Allen" and left a phone number. Subscriber information showed that the number belonged to Allen Weinstein at an address on West Laguna. Among the vehicles registered to Weinstein was a Jeep Cherokee.

Posing as a UPS representative, detective Oien made arrangements to deliver the package to Erin Gilmore at her Tucson address at 3:00 p.m. a few days later. Shortly after police arrived in a UPS van, Weinstein drove up in a white Jeep Cherokee and parked directly across the street from Gilmore's house. Detective Michael Garcia approached Weinstein and, after Weinstein produced identification, asked him if he knew anything about the package. Weinstein replied he "was just a good friend." He then spent several minutes using a cellular phone in his Jeep. Weinstein was asked to exit the Jeep while two officers checked the front seat area for the vehicle identification number and registration. Twenty to thirty minutes later, a narcotics dog was brought to the vehicle and it "alerted" at both the driver and passenger doors. The dog was then let into the vehicle where it alerted on the console between the front seats. Two bottles containing heroin were found there, and a brown paper bag containing currency was found in the back seat. More heroin was later found in Weinstein's shirt pocket.

MANTIS personnel went to Weinstein's house, entered and conducted a "protective sweep" of the residence, going room-to-room looking for people. Oien then obtained a search warrant and police reentered and found several varieties of narcotics, cash, drug paraphernalia, and numerous firearms. While the warrant was being executed, Weinstein was detained in a police car parked in front of his house, but he was released later that day.[2]

Weinstein was subsequently indicted on charges of attempted unlawful transfer of a narcotic drug, possession of a narcotic drug for sale, possession of marijuana, possession of drug paraphernalia, possession of a deadly weapon during a drug offense, and nine counts of drug possession. Weinstein moved to suppress evidence of the contents of the package and the items found during the searches of his vehicle, shirt pocket, and home. After a hearing, the trial court denied Weinstein's motion, and he was convicted on all counts.

## Discussion

Weinstein challenges the trial court's denial of his motion to suppress the contents of the package, arguing that the MBE employee who opened it was acting as an agent of the state and should therefore be "held to Constitutional standards concerning search and seizure." He further contends the evidence found in his vehicle, shirt pocket, and home should have been suppressed as the "fruit of six hours of police custody, during which ... he was never arrested." We review the trial court's ruling on a motion to suppress evidence for clear and manifest error. *State v. Rodriguez*, 186 Ariz. 240, 921 P.2d 643 (1996); *State v. Stanley*, 167 Ariz. 519, 809 P.2d 944 (1991).

### a. Contents of the package

■ Weinstein first contends that because MBE and its employees had an ongoing relationship with the state for the purpose of aiding law enforcement, they were subject to Fourth Amendment requirements governing search and seizure. A wrongful search or seizure by a private citizen does not offend the Fourth Amendment, *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), but when a private citizen conducts a search or seizure acting as an " 'instrument' or agent of the state," Fourth Amendment concerns are implicated. *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564, 595 (1971).

2. The state explains that Weinstein was not arrested at that time because he was too ill to be accepted into the Pima County Jail, citing the deposition testimony of Sgt. Robert Martin. We will not consider this testimony because, although the transcript was marked as an exhibit at the suppression hearing, it was not admitted into evidence and is not a part of the record on appeal.

■ In the only other reported Arizona case involving similar facts, another panel of this court considered a similar constitutional challenge to the opening of a shipped package by UPS employees who then notified police, turned the package over to them, and provided the auto license plate number of the shipper. *State v. Best,* 146 Ariz. 1, 703 P.2d 548 (App.1985). The court found no violation of the Fourth Amendment, but provided no rationale, only citing *Jacobsen.* In *Jacobsen,* the Supreme Court found no unconstitutionality in the opening of a suspicious package by a private carrier's employees and upheld its seizure by police as not unreasonable under the Fourth Amendment. The Court did not, however, address the issue of governmental involvement in a private search.

As Weinstein points out, the question whether a private party acted as an agent or instrument of the state has been addressed by the Ninth Circuit in *United States v. Walther,* 652 F.2d 788 (9th Cir.1981). There, the court held that the issue should be determined on a case-by-case basis, focusing on "(1) the government's knowledge and acquiescence, and (2) the intent of the party performing the search." *Id.* at 792. Weinstein's brief does not address the government's knowledge and acquiescence in the search of his package. However, the record reflects some sort of ongoing relationship between MBE and MANTIS. Oien previously had given his business card to the MBE store and requested that employees contact MANTIS if they found or suspected contraband was being transported in order to keep it from being transferred. MBE employees had complied and had turned over suspicious packages before.

In evaluating the government's conduct in a relationship between an airline employee and the Drug Enforcement Agency, the *Walther* court stated:

> While a certain degree of government participation is necessary before a private citizen is transformed into an agent of the state, *de minimis* or incidental contacts between the citizen and law enforcement agents prior to or during the course of a search or seizure will not subject the search to fourth amendment scrutiny. The government must be involved either directly as a participant or indirectly as an encourager of the private citizen's actions before we deem the citizen to be an instrument of the state.... The requisite degree of governmental participation involves some degree of knowledge and acquiescence in the search.

652 F.2d at 791–92 (citation omitted).

Oien did not ask MBE personnel to open packages, nor did he contact them about specific packages or senders. Steven Sweet, the MBE employee who notified MANTIS of the package Weinstein had shipped, testified he was told by his co-workers to contact MANTIS about suspicious packages and had done so several times, but he had never been paid by the police, nor did they contact him about any package he had turned over.[3] We find this level of police involvement insufficient to meet the requisite degree of governmental participation necessary to convert Sweet into an agent of the state. *Cf. United States v. Reed,* 15 F.3d 928 (9th Cir.1994) (police officers' presence during hotel employee's search of guest's belongings and failure to discourage him from searching beyond that necessary to secure hotel property constituted governmental knowledge and acquiescence); *Walther* (airline employee who opened package found to be acting as government agent where he had previously been a documented and paid informant of the Drug Enforcement Administration, and expected compensation if the package contained significant quantity of illegal drugs).

Weinstein maintains, however, that Sweet "act[ed] as a governmental agent" because his actions were "motivated by his desire to function as an instrumentality of the State." At the suppression hearing, Sweet, a former Air Force military police officer whose wife is a Deputy County Attorney, testified that if MBE employees suspect a package contains contraband, they inspect it. When asked why he notified law enforcement of suspi-

---

**3.** Sweet further testified that MBE's corporate headquarters had since directed that the practice of opening packages be discontinued.

cious packages, Sweet responded, "I think it's a civic responsibility. I don't like drugs, and I want to see them off the street; kids, plain and simple." Weinstein maintains that this "explicit[ly]" evinced Sweet's intent to act as a government agent. We disagree. From Sweet's testimony, the trial court could reasonably infer that he was motivated by desire to be a "good citizen" and to protect children from the dangers of drugs. *See State v. Steiger*, 134 Ariz. 268, 655 P.2d 808 (App.1982), and *State v. Olson*, 134 Ariz. 114, 654 P.2d 48 (App.1982) (on appeal from denial of motion to suppress, all reasonable inferences resolved in favor of state).

Furthermore, when Sweet telephoned Oien, he told him that he and other MBE employees did not want contraband on the property and asked him to remove the package if it did, in fact, contain contraband. *See State v. Carroll*, 111 Ariz. 216, 526 P.2d 1238 (1974) (common carrier has the right to protect itself and not be an unwitting carrier of contraband). Although the trial court did not specifically find that Sweet was not acting as an instrument of the state, we cannot say the court clearly erred in denying Weinstein's motion to suppress the contents of the package. *See Best; cf. State v. Millan*, 185 Ariz. 398, 916 P.2d 1114 (App.1995) (luggage consigned to common baggage area of public carrier, airport, or similar facility involves reduced expectation of privacy as opposed to when it is carried personally).

**b.  Vehicle search**

■ Weinstein next contends there was insufficient evidence to detain him for an investigatory stop, claiming "[t]here was no logically compelling reason to believe that [he] would have contraband in his Jeep when the only known illegal substance connected with him was currently in the hands of the police who were in Ms. Gilmore's house." (Emphasis omitted.)  To make an investigatory stop, however, the police need only have "reasonable suspicion" that the suspect is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Rogers*, 186 Ariz. 508, 924 P.2d 1027 (1996).  Police had ample reasonable suspicion to stop Weinstein when he arrived at Gilmore's house at the precise time she had arranged delivery of a package containing heroin mailed by an "Allen Wested" who drove a white Jeep Cherokee. Inquiries about the package had been made by someone named "Allen," who had left a phone number belonging to Weinstein, and police had determined that Weinstein had a Jeep Cherokee registered in his name. *See State v. Stabler*, 162 Ariz. 370, 783 P.2d 816 (App.1989) (investigative stop of pickup justified by anonymous call that pickup with same license number had been involved in drug transaction near area of stop).

■ Weinstein further argues that even if the stop were permissible, the warrantless search of his vehicle was improper because the search was not supported by probable cause, the vehicle was not mobile, and the officers had time to secure a warrant.[4]  "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits the police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. ——, ——, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031, 1036 (1996).  The canine investigation of the outside of the vehicle did not constitute a search for Fourth Amendment purposes. *State v. Morrow*, 128 Ariz. 309, 625 P.2d 898 (1981); *State v. Paredes*, 167 Ariz. 609, 810 P.2d 607 (App.1991).  Contrary to Weinstein's assertion, once the dog alerted outside the vehicle,[5] the police had probable cause to search

---

**4.** Weinstein also contests the officers' limited search of the front dash area of his vehicle for registration and vehicle identification before the arrival of the canine unit. Such a search is constitutionally permissible. *See State v. Renfrow*, 123 Ariz. 64, 597 P.2d 546 (App.1979) (warrant not required for vehicle identification inspection reasonably predicated on apparently reliable information). *See also United States v. Powers*, 439 F.2d 373, 375 (4th Cir.1971) (vehicle identification numbers "are, at the least, quasi-

public information"). Moreover, even if this search was improper, Weinstein suffered no prejudice because no contraband was found and no evidence resulted from it.

**5.** Weinstein makes much of the fact that the testimony of Detective Ford and the dog's handler differed as to the manner in which the dog alerted. We need not consider this argument because the dog handler's testimony that the dog

the entire car. *United States v. Guerrera,* 554 F.2d 987 (9th Cir.1977); *Morrow.*

■ Weinstein additionally contends that, because he had been removed from his Jeep and was forced to sit a distance from it, "there was no justification for simply not obtaining a telephonic search warrant," citing *State v. Kempton,* 166 Ariz. 392, 803 P.2d 113 (App.1990). In that case, police received a tip from a reliable informant at 12:30 a.m. that the defendant had cocaine in his white 1985 Toyota pickup truck and would have it when he left for work in the morning. Shortly after 7:00 a.m., police followed the defendant as he drove his truck, feigned a traffic stop, and searched his vehicle, finding small amounts of marijuana and cocaine. Division One of this court held the search unconstitutional, finding the police had 6½ hours to obtain a warrant "without any apparent fear that the truck would flee the jurisdiction" because they knew the defendant, his vehicle, where he lived, and where he worked, and had information "that [he] would remain in [town]." *Id.* at 397, 803 P.2d at 118.

Unlike the police in *Kempton,* who had 6½ hours between the informant's call and their stop of the defendant, the officers involved here were faced with Weinstein's sudden appearance at the time they had arranged to deliver the heroin. Although the police knew Weinstein's address, they did not know him, if or where he worked, whether he was a flight risk, or whether he would destroy evidence if he were released while they obtained a warrant.[6] "For constitutional purposes, there is no difference between on the one hand seizing and holding an automobile before presenting the issue of probable cause to a magistrate, and on the other hand, carrying out an immediate search without a warrant; and that given probable cause to search either course was reasonable under the Fourth Amendment." *State v. Benge,* 110 Ariz. 473, 478, 520 P.2d 843, 848 (1974); *see also Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Under the circumstances, we cannot say the trial court erred, let alone committed clear and manifest error, in denying Weinstein's motion to suppress the evidence found in his car. *State v. Million,* 120 Ariz. 10, 583 P.2d 897 (1978).

### c. Contents of shirt pocket ·

■ Oien testified that after finding contraband in the vehicle, police "elected to look in Weinstein's shirt pocket to see if he had any contraband" and found another packet of heroin inside a cigarette package. Weinstein argues they could not lawfully search him because he had not been arrested. We disagree. The contraband already found in Weinstein's vehicle provided the police with probable cause to arrest him. At that time, the investigative stop became a *de facto* arrest, even though the police did not ultimately take him into custody. Indeed, Oien testified Weinstein was not free to leave. *See State v. Clevidence,* 153 Ariz. 295, 300, 736 P.2d 379, 384 (App.1987) ("If an officer has sufficient information from which he would make an arrest and, as an incident to that arrest, makes a lawful search, the search is not unreasonable if made before instead of after the arrest."). Police may conduct a full search of a person subject to a custodial arrest without a search warrant or probable cause to believe the search will produce evidence of a crime. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Furthermore, even if we were to assume the search of Weinstein's pocket was unconstitutional, it would not have affected the verdict. Weinstein was convicted of only one count of possession of heroin for sale, weighing more than one gram. The heroin from Weinstein's Jeep weighed more than three grams and another 398 milligrams was seized from his home. Thus, there was sufficient evidence to support Weinstein's conviction without the 143 milligrams found in his pocket.

---

alerted outside the vehicle supports the trial court's ruling.

**6.** While there are no rigid time limits for *Terry* stops, *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), an investigative detention must last no longer than necessary to effectuate the purpose of the stop. *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

#### d. Search of house

Finally, Weinstein challenges on two grounds the denial of his motion to suppress the evidence found in his home. He first argues that the affidavit supporting the warrant relied "exclusively on the illegally gathered evidence." As discussed above, none of the evidence gathered before securing the warrant was seized in contravention of the Fourth Amendment. Second, Weinstein argues that the police conducted an "illegal protective sweep" before executing the warrant. When police make an initial warrantless entry, " '[t]he products of a subsequent search under warrant may be admitted at trial, provided the warrant was based on information legally obtained.' " *State v. Gulbrandson,* 184 Ariz. 46, 58, 906 P.2d 579, 591 (1995), *quoting State v. Martin,* 139 Ariz. 466, 477, 679 P.2d 489, 500 (1984). The record shows police entered and searched Weinstein's home for occupants before obtaining a search warrant. Whether or not a protective sweep was warranted on the stated ground that Weinstein had made phone calls from his Jeep and could have alerted anyone at the house that police were on the way, police saw no contraband during their sweep and nothing arising from it was used to establish probable cause for the warrant. Thus, even if the initial warrantless entry were deemed unconstitutional, the trial court properly denied Weinstein's motion to suppress the contraband found during the execution of the warrant. *Gulbrandson; Martin.*

#### Disposition

Weinstein's convictions and sentences are affirmed.

PELANDER, P.J., and HOWARD, J., concur.