NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DERRICK COLEMAN, *Appellant*.

No. 1 CA-CR 15-0316
FILED 5-19-2016

Appeal from the Superior Court in Maricopa County
No.  CR 2013-002197-003
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Poster Law Firm, P.L.L.C., Phoenix
By Rick D. Poster
*Counsel for Appellant*

Derrick Coleman, Safford
*Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Maurice Portley joined.

---

D O W N I E, Judge:

¶1        Derrick Coleman appeals his convictions and sentences for conspiracy to commit possession of marijuana for sale and possession of marijuana for sale, class 2 felonies.[1]   *See* Ariz. Rev. Stat. ("A.R.S.") §§ 13-1003(A), (D), 13-3405(A)(2), (B)(6).  Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), Coleman's counsel has searched the record, found no arguable question of law, and asked us to review the record for reversible error.  *See State v. Richardson*, 175 Ariz. 336, 339 (App. 1993).  Coleman filed a supplemental brief *in propria persona* that we have considered.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        On January 17, 2013, members of the Maricopa County Sheriff's Office special investigations division conducted a marijuana reversal operation in which a confidential informant ("CI") sold marijuana to various individuals, including Coleman.  The CI arrived at the reversal operation location and parked her police-issued vehicle, loaded with 200 pounds of marijuana, in the garage.  After the garage door was closed, two men unloaded the marijuana into the home.  A short while later, Coleman and his co-defendant arrived at the residence in a white minivan.  The CI moved her vehicle out of the garage and Coleman pulled in, bringing with him the money to purchase the marijuana.

¶3        Coleman, his co-defendant, the CI, and others counted the money, and the CI saw bundles of marijuana being loaded into Coleman's van.  Detective Fausto, the CI's "handler," heard her say over audio surveillance that "the marijuana was put in the white minivan that was in the garage."  Soon after the CI left, Coleman and his co-defendant also

---

[1]     Coleman was initially indicted on a third count — money laundering in the second degree, a class 3 felony.  However, at the close of the State's case, Coleman moved for a directed verdict on all counts, and the court granted his motion as to the third count.

departed, and the case agent, Sergeant Uptain, ordered surveillance detectives to stop the van. Detective Pearce conducted the traffic stop, and, as he approached on foot, he noticed "a very strong odor of marijuana coming from the vehicle." Detective Iwan was asked to assist with the traffic stop in progress because Detective Pearce "needed a narcotics dog to detect if there was marijuana" in Coleman's van. Within six feet of the van, Detective Iwan could "smell the odor that [he knew] to be marijuana." Nonetheless, he continued his approach, and his dog alerted to the presence of drugs by scratching the van's rear passenger door. Detectives proceeded to search the van and found four bundles of marijuana (totaling 96 pounds) concealed under clothing in the rear compartment of the van.

¶4        At the location of the traffic stop, Sergeant Uptain read Coleman his *Miranda* rights, confirmed Coleman understood them, and interviewed him. Coleman denied seeing the marijuana in the home he had just come from, denied knowing how the marijuana ended up in the back of his van, denied smelling it even though Sergeant Uptain described the odor as "very strong," and explained the $42,000 in cash found in his co-defendant's purse constituted gambling winnings.

¶5        The jury found Coleman guilty as charged and further found the offenses were committed with the presence of an accomplice and in anticipation of pecuniary gain. The superior court sentenced Coleman to four years' imprisonment on each count, with the terms to be served concurrently, and ordered him to pay a $4,000 fine. *See* A.R.S. §§ 13-701(D) (aggravating circumstances), 13-3405(D) (fines for marijuana offenses).

## DISCUSSION

### I.        Motion to Suppress

¶6        In his supplemental brief, Coleman raises the following alleged errors relating to his motion to suppress: the State did not establish reasonable suspicion sufficient to conduct the stop of his van; the State failed to establish probable cause sufficient to search his van; Sergeant Uptain's testimony included hearsay and inconsistencies; and the State failed to establish the CI's reliability.

¶7        We will not reverse the denial of a motion to suppress absent a clear abuse of discretion. *See State v. Guillory*, 199 Ariz. 462, 465, ¶ 9 (App. 2001). "In reviewing the denial of a motion to suppress evidence, we consider only the evidence presented at the suppression hearing, and view that evidence in the light most favorable to upholding the trial court's ruling." *State v. Evans*, 235 Ariz. 314, 315, ¶ 2 (App. 2014).

¶8          When reviewing a claim that law enforcement lacked reasonable suspicion to conduct a traffic stop, "we apply a peculiar sort of *de novo* review, slightly more circumscribed than usual, because we defer to the inferences drawn by the trial court and the officers on the scene, not just the trial court's factual findings."  *Evans*, 235 Ariz. at 317, ¶ 8.  Reasonable suspicion represents more than a mere hunch, but "considerably less than proof of wrongdoing by a preponderance of the evidence."  *State v. Teagle*, 217 Ariz. 17, 23–24, ¶ 25 (App. 2007).  "[T]he articulated factors together must serve to eliminate a substantial portion of innocent travelers before the requirement of reasonable suspicion will be satisfied."  *Id.*

¶9          At the suppression hearing, Sergeant Uptain testified that on the day of the reversal operation, the CI was given a vehicle containing the marijuana and was followed by surveillance detectives to the residence where the operation was conducted.  During the operation, information was transmitted among the officers, including to detectives outside the surveillance perimeter who were to "conduct traffic stops on vehicles leaving the residence."

¶10         Detective Fausto advised officers that the CI indicated buyers were on their way to the residence, and when they arrived, the CI described the vehicle as a white Dodge Caravan; surveillance officers confirmed the van's arrival and relayed the license plate details.  Sergeant Uptain also received information that the van was loaded with "a portion of the 200 pounds of marijuana."  When the van left the residence, surveillance detectives followed it and conducted the traffic stop.  Based on the evidence presented at the evidentiary hearing, the detectives clearly had reasonable suspicion to justify the traffic stop.

¶11         "Probable cause exists where the arresting officers have reasonably trustworthy information of facts and circumstances which are sufficient in themselves to lead a reasonable man to believe an offense . . . has been committed and that the person to be arrested . . . did commit it."  *State v. Richards*, 110 Ariz. 290, 291 (1974).  Here, in addition to the evidence discussed *supra*, two detectives smelled a strong odor of marijuana coming from Coleman's van, and a narcotics dog alerted to the presence of marijuana.  *See State v. Decker*, 119 Ariz. 195, 197 (1978) (odor of marijuana emanating from vehicle constitutes probable cause to conduct search); *see also State v. Weinstein*, 190 Ariz. 306, 310–11 (App. 1997) (narcotics dog's alert provides probable cause).  Probable cause existed for a warrantless search of Coleman's van.

¶12 We are also unpersuaded by Coleman's hearsay assertion. He has not identified any specific instances of hearsay, but even if he had, during a suppression hearing, "the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 U.S. 667, 679 (1980).

¶13 Finally, the State was not required to establish the CI's reliability during the suppression proceedings. The State was merely required to prove, by a preponderance of the evidence, "the lawfulness in all respects of the acquisition of all evidence" that the State used at trial. *See* Ariz. R. Crim. P. 16.2(b). It did so.

## II.    Motion to Sever

¶14 Coleman's co-defendant moved to sever, arguing the two defendants would present antagonistic defenses. Coleman joined in the motion at the August 2014 evidentiary hearing. Coleman's counsel stated he would prefer a severance "just to keep it clean and to reduce the possibility of a mistrial."

¶15 Joint trials are the general rule, and the denial of a motion to sever is reviewed for an abuse of discretion. *State v. Murray*, 184 Ariz. 9, 25 (1995). The "mere presence of hostility between co-defendants, or the desire of each co-defendant to avoid conviction by placing the blame on the other does not require severance." *State v. Cruz*, 137 Ariz. 541, 544 (1983).

¶16 After hearing argument on the severance motion, the court found that Coleman and his co-defendant did not have mutually exclusive defenses because they both intended to deny any wrongdoing. The court did not find the evidence against one defendant was overwhelming compared to the other and did not find any potentially harmful rub-off effect. Based on the record before it, we find no abuse of discretion.

## III.    Sufficiency of the Evidence

¶17 Coleman contends the State failed to produce "sufficient evidence or testimony that pointed to me purchasing marijuana, or that I had knowledge that marijuana had been placed in my van." We disagree.

¶18 At trial, the CI testified about Coleman's presence and activities at the reversal operation, including bringing money to purchase the marijuana. Detective Iwan and Sergeant Uptain both testified about the strong odor of marijuana emanating from Coleman's van, suggesting his knowledge of the marijuana's presence. The State produced substantial

evidence — both direct and circumstantial — supporting the guilty verdicts. *See State v. Kuhs*, 223 Ariz. 376, 382, ¶ 24 (2010) (appellate court reviews sufficiency of the evidence by determining whether jury's findings are supported by substantial evidence; that is, evidence that is adequate to support a reasonable person's conclusion of guilt beyond a reasonable doubt); *see also State v. Henry*, 205 Ariz. 229, 232, ¶ 11 (App. 2003) (substantial evidence may be direct or circumstantial).

## IV.    Other Arguments

**¶19**        Coleman also contends the State "failed to establish or support the CI's veracity and therefore the court should have precluded the State from utilizing statements made by her and allowing her to testify at trial."  Whether the CI was credible was an issue for the jury to decide, not this Court on appeal. *See State v. Cid*, 181 Ariz. 496, 500 (App. 1995) ("The finder-of-fact, not the appellate court . . . determines the credibility of witnesses.").

**¶20**        As we understand his next argument, Coleman claims the verdicts were invalid because he and his co-defendant were charged "in concert with each other," so the jury could not have found him guilty on one count and his co-defendant not guilty on the same count.  We disagree. "The test for validity of the verdict is whether it was certain, unqualified and unambiguous considering the circumstances of the receipt of the verdict and poll of the jurors relative to their verdict." *State v. Hansen*, 237 Ariz. 61, 65–66, ¶ 11 (App. 2015).  Before the jury retired to deliberate, the court instructed it to "consider the charges against each defendant separately . . . based upon that defendant's own conduct and from the evidence which applies to that defendant, as if that defendant were being tried alone."  The evidence against Coleman and his co-defendant was not identical.

**¶21**        Coleman next claims his trial counsel was ineffective, but that issue that is not properly before us on direct appeal. *See State ex rel. Thomas v. Rayes*, 214 Ariz. 411, 415, ¶ 20 (2007) ("[D]efendant may bring ineffective assistance of counsel claims *only* in a Rule 32 post-conviction proceeding — not before trial, at trial, or on direct review.").

**¶22**        Coleman also asserts the trial judge was biased against him and made erroneous rulings.  After reviewing the record, we find no support for the bias allegation. *See State v. Ramsey*, 211 Ariz. 529, 541, ¶ 38 (App. 2005) (trial judges are presumed to be impartial, and a defendant must rebut that presumption by a preponderance of the evidence).  And we

are unable to address Coleman's contention that the judge "allowed evidence and testimony to be introduced and weighed that should have been disallowed" because he has not supported this argument with citations to the record or legal authority. *See State v. Moody*, 208 Ariz. 424, 452 n.9, ¶ 101 (2004) ("[B]riefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised.").

¶23 Next, Coleman challenges the denial of his motion to continue in order to secure new counsel. Whether to grant a continuance is within the superior court's discretion; a continuance is proper only upon a showing of extraordinary circumstances. *State v. Sullivan*, 130 Ariz. 213, 215 (1981). "The trial judge's decision will not be disturbed unless there is a clear abuse of discretion and prejudice results." *Id.* Coleman has not explained how the court abused its discretion other than by asserting "it was jurisprudently unethicall [sic] to deny [him] reasonable time to acquire" new counsel. He has also failed to demonstrate the requisite prejudice. Our review of the record reflects that trial counsel vigorously represented Coleman both before and at trial.

¶24 Finally, we briefly address other arguments Coleman makes that are unsupported by the record. First, he claims officers "withheld notes pertinent to the case, but prejudicial and injurious to their indictment . . . and the veracity of their CI." Nothing in the record supports this claim. Second, Coleman asserts he was not read *Miranda* rights "preceding detention." However, police officers are only required to give *Miranda* warnings prior to "custodial interrogation," *State v. Smith*, 193 Ariz. 452, 457, ¶ 18 (1999), and Coleman's recorded interview establishes that Sergeant Uptain read *Miranda* rights to Coleman prior to questioning. Third, Coleman opines he was "subjected to triple jeopardy" because the State closed and reopened his case several times before trial. Jeopardy, however, does not attach until a "criminal trial begins." *See Miller v. Superior Court (Romley)*, 189 Ariz. 127, 130 (App. 1997).

¶25 In addition to Coleman's supplemental brief, we have read and considered the brief submitted by his counsel and have reviewed the entire record. *See Leon,* 104 Ariz. at 300. We find no reversible error. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure, and the sentences imposed were within the statutory range. The superior court awarded Coleman 40 days of presentence incarceration credit. We discern no error in this calculation, though the record before us does not clearly reflect the time Coleman spent in custody before being released on his own recognizance. Coleman was present at all

critical phases of the proceedings and was represented by counsel. The jury was properly impaneled and instructed consistent with the offenses charged. The record reflects no irregularity in the deliberation process.

**CONCLUSION**

**¶26** We affirm Coleman's convictions and sentences. Counsel's obligations pertaining to Coleman's representation in this appeal have ended. Counsel need do nothing more than inform Coleman of the status of the appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). On the court's own motion, Coleman shall have 30 days from the date of this decision to proceed, if he desires, with an *in propria persona* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama