IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2001-0491 |
| Appellee, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| LENNY M. BOX, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF GILA COUNTY

Cause No. CR 01-013

Honorable Edward L. Dawson, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Joseph L. Parkhurst                                  Tucson
                                                              Attorneys for Appellee

W. Michael Walz                                                             Phoenix
                                                              Attorney for Appellant

E S P I N O S A, Chief Judge.

¶1 After a jury trial, appellant Lenny M. Box was convicted of transporting marijuana for sale. The trial court sentenced him to a presumptive, five-year prison term. On appeal, Box challenges the trial court's denial of his motion to suppress the marijuana found in the trunk of his car after an allegedly unconstitutional search and seizure. For the following reasons, we affirm.

BACKGROUND

¶2 In reviewing a denial of a motion to suppress, we review only the evidence submitted at the suppression hearing, State v. Blackmore, 186 Ariz. 630, 925 P.2d 1347 (1996), and we view the facts in the light most favorable to upholding the trial court's ruling, State v. Sheko, 146 Ariz. 140, 704 P.2d 270 (App. 1985). The facts here are essentially uncontested. Department of Public Safety (DPS) Officer Torres was driving north on a state highway near Globe when he observed a Buick, driven by appellant, exceeding the speed limit. Torres's attention was also drawn to the Buick because an officer had stopped a car the previous day that had been discovered to be carrying 145 pounds of marijuana, and that car had contained a key with a Buick tag affixed to it. Torres did not stop appellant, however, because Torres was transporting two people in his patrol car in connection with an unrelated incident, and agency regulations did not permit him to make a civil traffic stop in that circumstance. Instead, he radioed the foregoing information to his dispatcher with instructions to contact the Gila County Sheriff's Office and request that a local officer be dispatched to stop appellant for speeding.

¶3 Officer Baxley responded to the dispatch and saw Torres following appellant. Torres confirmed with Baxley via radio that appellant's car was the subject of the dispatch. Baxley stopped appellant's car and told appellant he had been stopped at the request of the DPS officer who had seen him speeding. While speaking with appellant during the stop, Baxley noticed

the following things in the car. There were two small duffel bags, a blanket, and a pillow in the back seat. There was a plastic jug of water and a plastic bag containing food wrappers and other trash on the floorboard, and there was a cellular telephone, an open Arizona map, and a citizen's band (CB) radio on the front seat. Baxley, whose ten-year career in law enforcement included specialized drug interdiction training through the "Desert Snow highway interdiction program," testified that, from his training and experience, he knew that "[s]ome of those items are consistent with people trafficking in illegal drugs." Appellant gave Baxley his Kansas driver's license, vehicle registration, and proof of insurance. Baxley conducted radio checks on these documents and determined that "[e]verything was clean." He then asked appellant to step out of the car and issued a written warning for the speed violation.

¶4        After Baxley handed appellant the warning and returned his driver's license and other documents, he asked appellant where he had been coming from. Appellant said he had left Kansas about ten days earlier and had been vacationing in Tucson. When asked whether he had stayed at a hotel or with a friend, appellant would not say. Baxley asked about the duffel bags, and appellant told him they contained all his clothes for his trip. Baxley asked appellant whether he had any weapons or large amounts of money. Appellant replied that he had no weapons, that there were ten or fifteen dollars in loose currency thrown around the front seat area that he used for "toll bridges," and that he carried approximately $500 on his person. Baxley asked if there was marijuana in the car. Appellant chuckled and looked away, saying he did not drink and would not use marijuana or drugs. Baxley asked if there was cocaine, methamphetamine, or heroin in the car; appellant denied that there was, this time meeting the officer's eyes. Baxley testified that he then

3

asked for consent to search the vehicle. The reason why is some of the indicators I found in the vehicle from looking in there, and his inconsistent statements about the trip to Tucson and where he was at, I felt that he was probably trafficking in illegal drugs and requested consent to search.

Appellant declined to consent. Baxley did not smell marijuana or any suspicious odor.

¶5 Because Baxley was traveling with a trained narcotics detection dog, he then asked appellant to step away from the car to allow the dog to sniff it. In under a minute, the dog "alerted" on the trunk, in Baxley's words, its way of "announcing that there is an odor of illegal drugs coming from the trunk." Torres, who had since deposited his passengers, returned to the scene of the stop, and Baxley told him the dog had alerted on appellant's car.

¶6 The officers asked appellant for a key to the trunk, but he told them he did not have one. The officers were forced to access the trunk through the interior, which required "remov[ing] the back seat area and open[ing] up the carpet covering that was there." They found several bundles wrapped in contact paper in the trunk. Baxley could smell the odor of marijuana, and he cut open one of the bundles and saw that it was full of marijuana. After removing all the bundles and laying them out on the car, Baxley placed appellant under arrest. The entire encounter, from the time Baxley's dispatcher called him to appellant's arrest, lasted approximately twenty-five minutes.

¶7 Appellant moved to suppress the marijuana, arguing that its discovery was the product of an unconstitutional stop and, alternatively, the product of an unconstitutional detention that had occurred after the purpose of the traffic stop had been completed. In reviewing the denial of a motion to suppress evidence, we defer to the trial court's factual determinations, but the

4

ultimate ruling is a conclusion of law we review de novo. State v. Valle, 196 Ariz. 324, 996 P.2d 125 (App. 2000).

## DISCUSSION

### I.  Stop Authorized by A.R.S. § 28-1594

¶8          Appellant first argues, as he did below, that Baxley was not authorized to stop him because the officer had not personally observed him speeding.  In rejecting this claim, the trial court found it was permissible for Baxley to stop and temporarily detain appellant at the request of Torres, who had actually seen appellant speeding.  The court noted that this scenario frequently occurs in the case of an officer operating a radar gun who receives the assistance of other officers in stopping an offender until the officer with the radar gun can proceed to the scene of the stop and issue a citation.  The court added that, "if Officer Baxley had issued a citation for a traffic offense which he had not seen, that citation would be fatally flawed."

¶9          Appellant's argument is based on A.R.S. § 13-3883(B), which provides in relevant part as follows:  "A peace officer may stop and detain a person as is reasonably necessary to investigate an actual or suspected violation of any traffic law committed in the officer's presence and may serve a copy of the traffic complaint for any alleged civil or criminal traffic violation." (Emphasis added.)  Appellant contends that, because Baxley did not personally witness the alleged speeding violation, his stop was therefore made in violation of article II, § 8 of the Arizona Constitution,[1] which prohibits disturbing individuals in their private affairs "without authority of

---

[1]We note that article II, § 8 of the Arizona Constitution in this context is no broader than the Fourth Amendment.  Petersen v. City of Mesa, 204 Ariz. 278, 63 P.3d 309 (App. 2003).

law."[2] The state argues that Baxley's stop was authorized by § 28-1594, which provides: "A peace officer or duly authorized agent of a traffic enforcement agency may stop and detain a person as is reasonably necessary to investigate an actual or suspected violation of this title and to serve a copy of the traffic complaint for an alleged civil or criminal violation of this title." This statute has no requirement that the suspected traffic violation occur in the officer's presence. Questions of statutory construction are issues of law we review de novo. *Zamora v. Reinstein*, 185 Ariz. 272, 915 P.2d 1227 (1996). When interpreting statutes, our goal is to find and give effect to the legislature's intent. *State v. Fell*, 203 Ariz. 186, 52 P.3d 218 (App. 2002).

¶10 For several reasons, we decline appellant's request, unsupported by case law, that we invoke the rule of lenity and find that § 13-3883(B) conflicts with and trumps § 28-1594 and conclusively bars a law enforcement officer from stopping a motorist for a traffic violation not committed in that officer's presence. First, § 13-3883(B) contains the permissive, nonrestrictive word "may," not conclusive, restrictive language such as "may only." Second, "the legislature is presumed to know existing law when it enacts a statute," *Wareing v. Falk*, 182 Ariz. 495, 500,

---

[2]At oral argument before this court, appellant urged that Baxley had not been justified in stopping appellant because the warning Baxley ultimately issued was for violating A.R.S. § 28-701(A), which proscribes driving "at a speed greater than is reasonable and prudent under the circumstances, conditions and actual and potential hazards then existing," and that, having not personally observed the alleged infraction in the context in which it occurred, Baxley could not have made the subjective determination of whether appellant's driving had been "reasonable and prudent." Appellant waived this argument by not presenting it in his opening brief. See *State v. Powers*, 200 Ariz. 123, ¶21, 23 P.3d 668, ¶21 (App. 2001) ("Arguments raised for the first time at oral argument are waived."). And, in any event, Baxley knew that Torres had observed appellant traveling forty-five miles per hour in a thirty-five-mile-per-hour zone; that fact alone was evidence that appellant had been driving at a greater than prudent and reasonable speed. See *State v. Rich*, 115 Ariz. 119, 563 P.2d 918 (App. 1977) (driving in excess of posted speed limit is presumptive, albeit rebuttable, violation of § 28-701(A)).

897 P.2d 1381, 1386 (App. 1995), and is presumed not to enact meaningless, redundant, or futile legislation, State v. City Court of Tucson, 138 Ariz. 244, 673 P.2d 988 (App. 1983). Section 13-3883(B) was enacted in 1990;[3] § 28-1594 was enacted in 1995.[4] To afford § 28-1594 any nonredundant meaning in light of the preexisting § 13-3883(B), we can only conclude the former authorizes a peace officer to stop motorists for traffic violations committed outside his or her presence.

¶11 Finally, when faced with statutory ambiguities, we may look to title and section headings of statutes for guidance in determining legislative intent. Flórez v. Sargeant, 185 Ariz. 521, 917 P.2d 250 (1996). Section 13-3883(B) appears in the criminal code at article 7, chapter 38, title 13, A.R.S., and is entitled "Arrest." Section 13-3883 itself is entitled "Arrest by officer without warrant" and addresses warrantless arrests under several scenarios. Subsection (B) involves suspected traffic violations, which, of course, in most cases, first involve a traffic stop, thus explaining why the "stop" is mentioned in the statute. But the focus of § 13-3883(B), read in the context of the surrounding statutory provisions, is not on the stop but on the issuance of the citation, the equivalent of an "arrest" in this context.

¶12 Section 28-1594, in contrast, appears in the transportation code and is entitled "Authority to detain persons." Its focus is on the stop and detention of a motorist for the purpose of issuing a citation. Thus, construing the two statutes in harmony, as we must attempt to do, see State v. Tarango, 185 Ariz. 208, 914 P.2d 1300 (1996), we conclude that § 28-1594 permits an

---

[3]Enacted by 1990 Ariz. Sess. Laws, ch. 338, § 1.

[4]Enacted as A.R.S. § 28-3794 by 1995 Ariz. Sess. Laws, ch. 132, § 3; renumbered as § 28-1594 by 1996 Ariz. Sess. Laws, ch. 76, § 6.

officer to stop a vehicle and detain the driver for an actual or suspected traffic violation not committed in that officer's presence but observed and reported by another officer. We note that we are not called on to decide whether Baxley was authorized to cite appellant for speeding, because he only issued a warning. Because Baxley's stop was authorized by law, it did not violate the state constitution.

## II. Minimally Extended Detention Did Not Violate Fourth Amendment

¶13 Appellant next argues, as he did below, that the trial court should have suppressed the marijuana because his rights under the Fourth Amendment to the United States Constitution were violated when, after issuing appellant the written warning for speeding, Baxley continued to detain him without reasonable suspicion for further interrogation and, ultimately, the drug dog investigation. The trial court denied this claim, finding that appellant's arrest and, presumably, the search of his trunk that led to his arrest, was supported by probable cause observed by Baxley, including "the fact that Ben, the Drug Dog, alerted in the area of the defendant's trunk." Although we find the trial court's result correct, we do so for a different reason. State v. Perez, 141 Ariz. 459, 687 P.2d 1214 (1984) (appellate court will affirm when trial court reached correct conclusion despite incorrect reasoning).

¶14 The Fourth Amendment protects against "unreasonable searches and seizures." The trial court correctly found that, based on all of Baxley's observations, including his dog's alerting on the trunk, the search of appellant's car was supported by probable cause and, therefore, was not unreasonable. In fact, the dog's alerting alone provided sufficient probable cause to justify the search. See State v. Weinstein, 190 Ariz. 306, 947 P.2d 880 (App. 1997) (when trained drug

8

detection dog alerted on outside of car, police had probable cause car contained contraband, justifying warrantless search of entire vehicle).

¶15    The dog sniff alone cannot have been an unreasonable search because a dog sniff is not a search for Fourth Amendment purposes when, as here, it is conducted on the exterior of a car in a public place at which the police have a right to be present. City of Indianapolis v. Edmond, 531 U.S. 32, 121 S. Ct. 447, 148 L. Ed. 2d 333 (2000) (dog sniff of exterior of car at drug checkpoint not a search); State v. Paredes, 167 Ariz. 609, 810 P.2d 607 (1991) (dog sniff of exterior of car subsequent to valid traffic stop does not constitute search); see also United States v. Place, 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983); State v. Morrow, 128 Ariz. 309, 625 P.2d 898 (1981). Moreover, "'police officers do not need an individualized reasonable suspicion of drug-related activity before subjecting a vehicle lawfully detained to a dog sniff.'" Paredes, 167 Ariz. at 613, 810 P.2d at 611, quoting United States v. Morales-Zamora, 914 F.2d 200, 205 (10th Cir. 1990). And the traffic stop was not an unreasonable seizure because, as discussed above, the stop of appellant's car was justified by his speeding, as witnessed by Torres and relayed to Baxley.

¶16    Whether Baxley was justified in questioning appellant and conducting the dog sniff after issuing him the warning, however, is a different and closer question. Under Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), a police officer may make a limited investigatory stop in the absence of probable cause if the officer has articulable, reasonable suspicion, based on the totality of circumstances, that the suspect is involved in criminal activity. United States v. Arvizu, 534 U.S. 266, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). Appellant argues that he was the subject of an unreasonable seizure when, after being issued the written

9

warning for speeding, he was further detained and subjected to Baxley's additional questioning and the drug dog sniff. Appellant's claim is premised on the principle that an investigative detention should last no longer than necessary to effectuate the purpose of the stop. Florida v. Royer, 460 U.S. 491, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); see State v. Winegar, 147 Ariz. 440, 447, 711 P.2d 579, 586 (1985) (Terry stops tolerated absent probable cause because "they are brief and as narrowly circumscribed as possible"); cf. State v. Riley, 196 Ariz. 40, 992 P.2d 1135 (App. 1999) (continued detention of passenger following driver's arrest justified by reasonable suspicion).

¶17 Appellant relies heavily on United States v. Wood, 106 F.3d 942 (10th Cir. 1997), a factually similar case. There, an officer stopped Wood for speeding and noticed trash, including fast food wrappers, and open maps in the car. Wood appeared to be nervous and gave inconsistent stories about where he had rented the car. The officer wrote Wood a warning for speeding and, after giving him that warning and returning his license and rental papers, told him he was free to go. The officer then asked Wood if he had any drugs or weapons; Wood replied that he did not. The officer asked Wood if he would agree to a search of the car, but Wood refused. The officer then told Wood that he was detaining the car to subject it to a dog sniff. A canine unit was called and, after it arrived, a dog alerted on the car, leading to a search of the trunk that revealed narcotics. The Tenth Circuit, finding most of the circumstances before the dog sniff innocuous, held that they did not cumulatively amount to reasonable suspicion to justify Wood's further detention until the dog team arrived and ordered the narcotics suppressed. Id.

¶18 A noteworthy factual distinction between this case and Wood is that, in Wood, the officer making the traffic stop did not have a narcotics dog in his patrol car, although the decision

10

does not specify how long the defendant was detained while the canine unit was summoned and transported to the scene of the stop. But another factually similar case, not cited by the parties, is United States v. $404,905.00 in U.S. Currency, 182 F.3d 643 (8th Cir. 1999), which, as here, involved a traffic stop made by an officer with a trained narcotics dog already in his patrol car. After stopping a truck pulling a trailer for speeding, the officer collected the driver's license, vehicle registration, and rental papers from the driver. When checks on these documents had been completed, the officer told the driver they would be returned to him after the drug dog sniffed the truck and trailer. In approximately thirty seconds, the dog alerted on the trailer, a subsequent search of which revealed marijuana and currency.

¶19    The Eighth Circuit held this procedure did not violate the Fourth Amendment, notwithstanding that the officer had no articulable suspicion whatsoever that the driver was transporting drugs. Id. The court noted that a stop for a traffic violation is more akin to an arrest based on probable cause than to an investigatory stop, that law enforcement officers are afforded discretion in the length of time to perform an arrest, and that the additional time—no more than two minutes—the dog sniff added to the traffic stop was a de minimus intrusion on the driver's liberty in light of the government's interest in interdicting the transportation of illegal drugs. Id. The court also noted that the defendant would have had no basis for seeking suppression of the evidence if the officer had had a partner conduct the dog sniff while he processed the traffic ticket or if the dog had been trained to do so on its own. Id.; see also Wilkes v. State, 774 A.2d 420 (Md. Ct. App. 2001) (no constitutional violation when officer with drug dog arrived at scene of traffic stop made by another officer and conducted dog sniff before traffic stop completed).

11

¶20     Appellant's Fourth Amendment argument would be similarly baseless if Baxley had conducted the dog sniff before he had finished issuing the warning to appellant, if he had had a partner who had done so, or if the dog had alerted on appellant's car on its own before the end of the traffic stop. We agree with the Eighth Circuit in $404,905.00 that constitutional violations warranting the suppression of evidence should not turn on such artificial and fortuitous distinctions. We also find that the additional intrusion on appellant's liberty following the conclusion of the traffic stop was similarly de minimus.

¶21     When Baxley returned appellant's documents to him and handed him the written warning, appellant was free to leave. See State v. Acinelli, 191 Ariz. 66, 952 P.2d 304 (App. 1997). But the officer was equally free to ask appellant additional questions unrelated to the traffic stop. See Ohio v. Robinette, 519 U.S. 33, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996) (permissible for officer, after concluding traffic stop, to ask driver whether he carried drugs or money and for permission to search car for same); State v. Flores, 195 Ariz. 199, 986 P.2d 232 (App. 1999) (same); Acinelli (same); State v. Gaulrapp, 558 N.W.2d 696 (Wis. Ct. App. 1996) (same; such questioning implicitly permissible under Robinette); see also Commonwealth v. Strickler, 757 A.2d 884 (Pa. 2000) (interpreting Robinette as establishing that endpoint of initial detention phase of traffic stop is return of driver's documents with issuance of citation or warning and that consensual encounter may follow, the consensual nature of which is evaluated by totality of circumstances). In our view, the ensuing brief interaction between Baxley and appellant was within the scope of a consensual encounter.

¶22     The Fourth Amendment permits police officers to approach and question individuals in public places so long as a reasonable person would understand that he or she can refuse to

answer. Florida v. Bostick, 501 U.S. 429, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991). In State

v. Richcreek, 187 Ariz. 501, 505, 930 P.2d 1304, 1309 (1997), our supreme court clarified that,

although the Fourth Amendment permits officers to engage individuals in Bostick-type questioning

in public places in the absence of reasonable suspicion, officers may not stop a car in order to so

question the driver, because "[w]hen the blue lights on the patrol car begin to flash," no

reasonable driver would, or should, feel free to ignore them and continue on his or her way.

Here, in contrast and as discussed above, Baxley had validly stopped appellant for speeding.

Accordingly, the constitutionality of the stop is not at issue, and the officer's further conversation

with appellant after he completed the traffic stop by issuing appellant the warning was within the

ambit of a voluntary exchange permitted under Bostick and Richcreek.[5] See United States v.

Hernandez, 93 F.3d 1493, 1498 (10th Cir. 1996) ("A traffic stop may become a consensual

encounter if the officer returns the license and registration and asks questions without further

constraining the driver by an overbearing show of authority."). Nothing in the record shows that

Baxley dominated the ensuing colloquy with an overbearing show of authority or that the exchange

was anything but consensual. Indeed, the record reflects that appellant shared with Baxley details

---

[5]We are aware of the following language in Richcreek: "When . . . the stop of an automobile is not involved, the Supreme Court [in Bostick] has held that police officers may approach individuals at random in public places to ask them questions as long as a reasonable person would understand that he or she could refuse to answer." 187 Ariz. at 505, 930 P.2d at 1308 (emphasis added). The quoted language, read in context, applies to the facts of Richcreek, in which police officers, with no reasonable suspicion, impermissibly stopped an automobile to question the driver. We do not read Richcreek to preclude Bostick-type questioning in a case such as this in which a proper vehicle stop is only collaterally related to the Fourth Amendment analysis.

of his longtime participation in a rock band, and that, when asked for consent to search his car, appellant refused.

¶23     Moreover, although the record does not reflect the exact duration of Baxley's interaction with appellant between issuing the warning and conducting the dog sniff, it was necessarily short. Only a total of twenty-five minutes elapsed between Baxley's receipt of the call from his dispatcher and his arrest of appellant. For much of that time, Baxley was occupied with driving to intercept appellant and Torres, maneuvering behind appellant and stopping him, advising appellant about the reason for the stop and why he was making the stop in Torres's stead, collecting appellant's documents, conducting a check on those documents and returning them, writing the written warning, and advising appellant about it. More time was devoted, after the dog's alert but before appellant's arrest, to the officers' unsuccessful attempt to procure a key to the trunk and their ensuing forcible entry through the back seat and into the trunk area, resulting in the discovery of the bundles that they opened and found to contain marijuana. The period between the issuance of the warning and the dog sniff was clearly brief.

¶24     The state also argues that, by the time Baxley conducted the dog sniff, he had already developed reasonable suspicion that appellant was transporting drugs through a combination of his own observations and appellant's answers to his questions.[6] But we need not

---

[6]The state urges that a number of factors, while individually consistent with innocence, in the aggregate to an experienced officer instilled reasonable suspicion of drug trafficking, including that appellant gave Baxley an evasive response about where he had stayed in Tucson, see United States v. Malone, 886 F.2d 1162 (9th Cir. 1989) (reasonable suspicion developed in part by inability of subject to give local address at which he claimed to have been staying); Baxley observed the two small duffel bags and other items he characterized as suspicious in the interior of the car, see United States v. Jones, 44 F.3d 860 (10th Cir. 1995) (after officer stopped car for speeding, observations of car interior and occupants, including presence of only three small pieces

14

resolve this issue. The drug dog was already at the scene, and appellant was, at most, only sightly inconvenienced when he was further detained for less than a minute while the dog sniffed his vehicle. Bearing in mind that appellant had originally been lawfully detained, that Baxley's brief ensuing conversation with him was of a consensual nature, and that the dog sniff took less than one additional minute, we find that the post-traffic stop detention of appellant here was de minimus and not unreasonable under the Fourth Amendment. See $404,905.00; see also Winegar, 147 Ariz. at 447, 711 P.2d at 586 (in determining the constitutionality of further investigatory detention, "'duration is an essential element'"), quoting United States v. Huberts, 637 F.2d 630, 636 (9th Cir. 1980). The dog's immediate alert on the trunk provided probable cause for the officers to search it, resulting in the discovery of the marijuana and appellant's arrest.

## DISPOSITION

¶25 Although, in denying the motion to suppress, the trial court's focus on the justification for appellant's arrest was misplaced, we nevertheless uphold its ruling because the court reached the correct conclusion. See Perez.

¶26 Appellant's conviction and sentence are affirmed.

_____
                    PHILIP G. ESPINOSA, Chief Judge

CONCURRING:

_____

of luggage, inappropriate for interstate travel, justified further detention to investigate for presence of drugs); appellant was traveling on an interstate highway with a CB radio in the car, see State v. Swanson, 172 Ariz. 579, 838 P.2d 1340 (App. 1992); and appellant suddenly broke eye contact when Baxley asked him about marijuana, see United States v. Robert L., 874 F.2d 701 (9th Cir. 1989).

_____

JOHN PELANDER, Presiding Judge

_____

WILLIAM E. DRUKE, Judge (Retired)