**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

FRANK MIRANDA-GUERENA,
            *Defendant-Appellant.*

No. 05-10198

D.C. No.
CR-02-00485-JMR/
BPV

OPINION

Appeal from the United States District Court
for the District of Arizona
John M. Roll, District Judge, Presiding

Argued and Submitted
February 16, 2006—San Francisco, California

Filed April 25, 2006

Before: Arthur L. Alarcón and M. Margaret McKeown,
Circuit Judges, and H. Russel Holland,*
Senior District Judge.

Opinion by Judge Alarcón;
Concurrence by Judge McKeown

---

*The Honorable H. Russel Holland, Senior United States District Judge
for the District of Alaska, sitting by designation.

4611

**COUNSEL**

Robert L. Murray, Tucson, Arizona, for the defendant-appellant.

Robert L. Miskell, Assistant United States Attorney, Tucson, Arizona, for the plaintiff-appellee.

**OPINION**

ALARCÓN, Circuit Judge:

Frank Miranda-Guerena appeals from the district court's order denying his motion to suppress evidence following his conditional guilty plea for violation of 21 U.S.C. §§ 846 and 841(b)(A), conspiracy to possess with intent to distribute cocaine base. Mr. Miranda-Guerena contends that the traffic stop that precipitated the government's search and seizure was not supported by reasonable suspicion that a traffic code violation had occurred; and that the traffic stop was not supported by reasonable suspicion that a drug trafficking crime had occurred. We affirm because we conclude that the traffic stop was supported by reasonable suspicion that a traffic violation had occurred.

**I**

Acting on information received from a patrol officer that Mr. Miranda-Guerena was involved in the sale of cocaine

from his home, Officer Michael Hammarstrom and other officers from the Tucson Police Department began surveillance of Mr. Miranda-Guerena and his co-inhabitant, Rosie Howerton. During three days of surveillance, the officers witnessed a number of short duration visits—visitors coming to Mr. Miranda-Guerena's house, and Mr. Miranda-Guerena or Ms. Howerton visiting other locations. Based on their experience, the officers considered these short visits to be consistent with narcotics transactions.

On January 9, 2002, Officer Hammarstrom observed Ms. Howerton driving a black Toyota Sequoia SUV. Mr. Miranda-Guerena was a passenger. Officer Hammarstrom decided to perform a traffic stop. He reasoned that a traffic stop was preferable to an investigative stop based on his suspicion of narcotics transactions because if he found nothing during a search for narcotics, his narcotics investigation would be revealed to Mr. Miranda-Guerena and Ms. Howerton. Because Officer Hammarstrom was not in a marked patrol vehicle with emergency lights, he could not complete the stop himself. He contacted the Pima County Sheriff's Department and asked them to be prepared to effectuate the stop if he observed a traffic code violation. The Pima County Sheriff's Department agreed to provide assistance and assigned Sheriff's Deputy Jason Davila to be prepared to stop the vehicle Ms. Howerton was driving if Officer Hammarstrom observed a traffic code violation.

Officer Hammarstrom observed Ms. Howerton commit two traffic code violations. He made a request over the police radio for Deputy Davila to stop the vehicle. Deputy Davila completed the stop.

At the time he stopped Ms. Howerton and Mr. Miranda-Guerena, Deputy Davila was not aware of the information the Tucson Police Department officers had uncovered during their narcotics investigation, and he had not witnessed the traffic code violations.

Mr. Miranda-Guerena moved to suppress the crack cocaine seized following the traffic stop. The district court denied the motion, concluding that, as a result of their surveillance, the Tucson Police Department officers reasonably suspected Mr. Miranda-Guerena and Ms. Howerton were engaged in drug trafficking. The district court did not determine whether the stop of the vehicle was supported by reasonable suspicion of a traffic violation.

## II

Mr. Miranda-Guerena contends that the district court erred in denying his motion to suppress because the stop of the vehicle driven by Ms. Howerton was not supported by reasonable suspicion of a traffic violation. On appeal, Mr. Miranda-Guerena challenges only the legality of the traffic stop, and does not challenge the search that led to the discovery of the cocaine. Accordingly, we limit our consideration to the traffic stop itself. Mr. Miranda-Guerena argues that under Arizona law, an officer must actually witness a traffic violation in order for a traffic stop to be valid. A district court's denial of a motion to suppress evidence is reviewed *de novo*, and its factual findings are reviewed for clear error. *United States v. Willis*, 431 F.3d 709, 713 n.3 (9th Cir. 2005).

[1] An investigatory stop of a vehicle is reasonable under the Fourth Amendment if the officer reasonably suspects that a traffic violation has occurred. *Willis*, 431 F.3d at 714. "If the facts are sufficient to lead an officer to reasonably believe that there was a violation, that will suffice . . . ." *United States v. Mariscal*, 285 F.3d 1127, 1130 (9th Cir. 2002).

Officer Hammarstrom testified that he personally observed Ms. Howerton commit two traffic violations. Mr. Miranda-Guerena contends that the traffic stop was invalid because Deputy Davila did not witness the violations. He argues that pursuant to Arizona Revised Statutes § 13-3883(B), a police

officer must personally witness the traffic violation.[1] According to Mr. Miranda-Guerena, because the stop violated § 13-3883(B), it was invalid under the Fourth Amendment. We reject this argument.

**[2]** To begin with, the stop did not violate Arizona law. Arizona Revised Statutes § 28-1594 allows traffic stops to be made outside of the officer's presence.[2] In *State v. Box*, 73 P.3d 623 (Ariz. Ct. App. 2003), the Arizona Court of Appeals concluded that to "afford § 28-1594 any nonredundant meaning in light of the preexisting § 13-3883(B), we can only conclude the former authorizes a peace officer to stop motorists for traffic violations committed outside his or her presence." *Id.* at 627.

**[3]** *Box* was decided after the district court denied the motion to suppress in this case, but its holding is nevertheless applicable. As this Court has explained, " '[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.' " *United States v. City of Tacoma, Washington*, 332 F.3d 574, 581 (9th Cir. 2003) (quoting *Rivers v. Roadway Express*, 511 U.S. 298, 312-13 (1994)). Section 28-1594 was in existence when Mr. Miranda-

---

[1]Section 13-3883(B) provides:

A peace officer may stop and detain a person as is reasonably necessary to investigate an actual or suspected violation of any traffic law committed in the officer's presence and may serve a copy of the traffic complaint for any alleged civil or criminal traffic violation. A peace officer who serves a copy of the traffic complaint shall do so within a reasonable time of the alleged criminal or civil traffic violation.

[2]Section 28-1594 provides:

A peace officer or duly authorized agent of a traffic enforcement agency may stop and detain a person as is reasonably necessary to investigate an actual or suspected violation of this title and to serve a copy of the traffic complaint for an alleged civil or criminal violation of this title.

Guerena was stopped. Therefore, at the time Mr. Miranda-Guerena was stopped, § 28-1594 permitted the stop, even if Arizona courts had yet to interpret the statute in light of § 13-3883(B).

## B

Mr. Miranda-Guerena argues alternatively that application of § 28-1594 to the traffic stop, as interpreted by the *Box* decision, would violate the right to due process under the United States Constitution. He asserts that "[d]ue process bars the retroactive application of a judicial expansion of a law only if the change in the law is unforeseeable." (App. Rep. Br. 2). We disagree.

**[4]** Application of the *Box* decision to Mr. Miranda-Guerena's case is not an unforeseeable expansion of the law in violation of due process. *United States v. Qualls*, 172 F.3d 1136, 1138 & n.1 (9th Cir. 1999) and the cases upon which it relies, *Brown v. Ohio*, 432 U.S. 161, 169 n.8 (1977) (citing *Bouie v. City of Columbia*, 378 U.S. 347 (1964)) and *Poland v. Stewart*, 117 F.3d 1094, 1099 (9th Cir. 1997), all forbid an unforeseeable expansion of a substantive criminal law—law that governs or affects a citizen's conduct. Retroactive application of unforeseen expansions of substantive law violate due process because an ordinary person is not able to conform his or her conduct to what the law requires. *See Poland*, 117 F.3d at 1100 (holding that application of state court's broad interpretation of special circumstances statute did not violate due process because the defendant had "fair warning under the statute" that his conduct could result in the death penalty). Here, the statutes in question govern police conduct, not citizens' conduct. Ms. Howerton was not deprived of fair warning of how to conform her operation of a motor vehicle to the law. The application of § 28-1594 and the *Box* decision to the traffic stop did not violate due process.

## C

**[5]** Ultimately, however, the issue before us is not whether the stop violated Arizona law. The relevant question is whether the stop violated the Fourth Amendment. The Fourth Amendment does not require the traffic violation to occur in the officer's presence. In other contexts, the Fourth Amendment allows reasonable suspicion to be based on reports from third parties, including other law enforcement agencies. *See United States v. Hensley*, 469 U.S. 221, 233 (1985) (holding that in conducting an investigatory stop, police may rely on a bulletin issued from another agency if that bulletin was based on reasonable suspicion). There is no reason traffic stops should be treated differently from reasonable suspicion for investigatory stops in general. In this case, the information Deputy Davila received from Officer Hammarstrom was based on reasonable suspicion: the officer's personal observation of the traffic violations.

If a state enacts a statute regulating traffic stops that requires a higher standard than the Fourth Amendment, that statute does not raise the bar for what constitutes a reasonable seizure. *See Oregon v. Hass*, 420 U.S. 714, 719 (1975) (holding that while a state may impose greater restrictions on police activity than required by the Fourth Amendment, it "may not impose such greater restrictions as a matter of federal constitutional law"). Such a rule would lead to a lack of uniformity in the level of protection the Fourth Amendment provides. The protection would depend on what statutes a particular jurisdiction enacted. *See Whren v. United States*, 517 U.S. 806, 815 (1996) (rejecting a proposed standard for stops based on police enforcement practices because such practices "vary from place to place and from time to time").

**[6]** The traffic stop was valid because it was supported by reasonable suspicion. Because the stop was based on reasonable suspicion of a traffic violation, we need not determine whether it was supported by reasonable suspicion of drug traf-

ficking. *See United States v. Mariscal*, 285 F.3d 1127, 1129 (9th Cir. 2002) (stating that a court of appeals may affirm "on any basis fairly supported by the record") (quoting *United States v. Smith*, 155 F.3d 1051, 1055 n.5 (9th Cir. 1998)).

AFFIRMED.

---

McKEOWN, Circuit Judge, concurring:

I write separately to underscore that federal law, not Arizona law, is determinative of the admissibility of evidence in this case. The majority dedicates substantial time explaining why the traffic stop was permissible under Ariz. Rev. Stat. § 13-3883(B), and why retroactive application of the Arizona Court of Appeals decision in *State v. Box*, 73 P.3d 623 (Ariz. Ct. App. 2003), does not offend due process. Maj. Op. at 4616-18. Neither question bears on our Fourth Amendment analysis.

Although Miranda-Guerena's argument focuses on state law, the issue before us is not whether the stop violated Arizona law. We have long held that "evidence seized in compliance with federal law is admissible without regard to state law." *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1374 (9th Cir. 1987). This principle holds true even where the evidence was obtained in violation of state law. *United States v. Cormier*, 220 F.3d 1103, 1111 (9th Cir. 2000) ("The general rule, therefore, is that evidence will only be excluded in federal court when it violates federal protections, such as those contained in the Fourth Amendment, and not in cases where it is tainted solely under state law.").

Exceptions to this general rule are limited. The admissibility of evidence in federal court depends on state law *only* when the "[federal] constitutional test for determining the legality of a search" necessarily implicates state law. *Cormier*,

220 F.3d at 1112. Thus, the Fourth Amendment requires exclusion of evidence seized in a search incident to an arrest or an inventory search that is illegal under state law, *see id.* at 1111-12, or pursuant to a traffic stop based on a mistake of substantive state criminal law, *see United States v. King*, 244 F.3d 736, 741-42 (9th Cir. 2001) ("Because an officer's mistake of [state] law cannot form the basis for reasonable suspicion to initiate a traffic stop, we reverse the district court's denial of King's motion to suppress."). Here, no exception applies. Absent a specific exception, the general rule remains that the federal constitutional test for reasonable suspicion is not affected by state law. *Cf. United States v. Becerra-Garcia*, 397 F.3d 1167, 1173-74 (9th Cir. 2005) (treating tribal law as equivalent to state law under the Fourth Amendment and holding that "the legality of the seizure does not depend on the rangers' authority under tribal law"; "the reasonableness of a seizure depends exclusively on federal law").

With these principles in mind, resolution of Miranda-Guerena's appeal turns on the question whether, under the Fourth Amendment, Officer Hammarstrom had reasonable suspicion of a traffic violation and Deputy Davila properly relied on instructions from Officer Hammarstrom in making the investigatory stop. Because I agree with the majority's resolution of this question, I concur in the result. *See* Maj. Op. at 4619.