NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

VICTOR HUGO SILVA, *Appellant.*

No. 1 CA-CR 12-0618
FILED 3-20-2014

---

Appeal from the Superior Court in Mohave County
S8015CR201000464
The Honorable Derek C. Carlisle, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adriana M. Zick
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Peter B. Swann and Judge Jon W. Thompson joined.

**G O U L D**, Judge:

¶1        Victor Hugo Silva appeals from his convictions and sentences of one count of transportation of dangerous drugs for sale, a class 2 felony, and one count of possession of drug paraphernalia, a class 6 felony.  He argues the court erred in denying his motion to suppress and motion for mistrial.  We disagree and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        While patrolling Interstate 15 around 1:40 am on February 4, 2010, Officer Callister observed a white car traveling 59 mph in a 55 mph zone.  He performed a traffic stop.  The car contained three individuals; Gustavo Flores, the driver, Nicole Daste, the front-seat passenger, and Silva, riding in the back seat.  Officer Callister questioned Flores while he conducted the stop, verified Flores' driver's license and checked the car's VIN.  He also questioned Daste and Silva regarding their travel plans.  After issuing Flores a warning for speeding and returning his documents, Officer Callister asked Flores if he would answer more questions.  Flores agreed.  The Officer asked if he could search the car and obtained signed consent forms from Flores, Daste, and Silva.  The search revealed methamphetamine in the center console.

¶3        Silva, Daste and Flores were arrested.  Flores and Silva were tried together.[1]    Before trial, Flores filed a motion to suppress the methamphetamine found in the car on Fourth Amendment grounds.  The court held a suppression hearing.  Following the hearing, the court denied Flores' motion; it concluded the stop was valid because the officer had an objective basis to stop the vehicle, the stop concluded when Officer Callister issued Flores a warning and returned his documents, and the encounter following conclusion of the stop was consensual.  After the court issued its ruling denying Flores' motion, Silva filed a motion to join

---

[1]        Flores was present throughout the trial; Silva was tried in absentia.

Flores' motion to suppress. The court granted Silva's motion to join –
with respect to the validity of the stop only – and denied Silva's motion to
suppress.

¶4       At the close of the State's case, the court granted a mistrial as
to Flores and severed his case from Silva's case.[2] The court stated:

> I know that the jury is supposed to follow the limiting
> instructions given by the Court. But at this point in time,
> Mr. Silva's not here, he's not subject to cross-examination,
> he's not able to explain his statement, and I think that his
> statement was clearly – the way it was provided by the
> witness, it's clearly inculpatory of Mr. Flores.
>
> . . .
>
> At this point in time, I think it's appropriate to sever the
> cases.

The court then sent Silva's case to the jury. Silva was convicted on both
counts and sentenced to concurrent terms of six months and five years.
He timely appeals.

**DISCUSSION**

I.    Motion to Suppress

¶5       "In reviewing a trial court's decision on a motion to
suppress, we view the facts in the light most favorable to upholding the
trial court's ruling and consider only the evidence presented at the
suppression hearing." *State v. Teagle*, 217 Ariz. 17, 20, ¶ 2, 170 P.3d 266,
269 (App. 2007). We will defer to the court's factual determinations, "but
the ultimate ruling is a conclusion of law we review de novo." *State v.
Box*, 205 Ariz. 492, 495, ¶ 7, 73 P.3d 623, 626 (App. 2003).

---

[2]      The mistrial was based on a *Bruton* violation that occurred during
trial. Detective Schoch testified about Silva's statements implicating
Flores. "The United States Supreme Court held in *Bruton* that a defendant
is deprived of his Sixth Amendment right to cross examine witnesses
when a non-testifying co-defendant's confession incriminating the
defendant is admitted at their joint trial." *State v. Blackman*, 201 Ariz. 527,
538, ¶ 42, 38 P.3d 1192, 1203 (App. 2002). Accordingly, the court granted
Flores a mistrial.

¶6  On February 4, 2010 around 1:40 a.m., Officer Callister was patrolling the area of Interstate 15 between Mesquite, NV and St. George, UT, referred to as the Arizona strip. He was running his stationary radar when a white passenger car drove by; the radar indicated it was traveling 59 mph in a 55 mph zone. Officer Callister caught up to the vehicle and paced it traveling between 59 and 60 mph. Officer Callister conducted a traffic stop.

¶7  When the vehicle pulled over, Officer Callister spoke with the driver, Flores, requesting his license, through the passenger-side window. He noticed the female front-seat passenger appeared to be very nervous. While verifying the driver's license, Officer Callister asked Flores to exit the vehicle and stand by his patrol car. There, Officer Callister asked Flores a number of questions about where he was headed, what he was going to do there, and how long he would be there. Flores replied that he was headed to Salt Lake to gamble at the casinos.

¶8  During the course of the stop Officer Callister learned that the female passenger, Daste, had recently been given the vehicle as a gift; while he checked the car's VIN number to verify its registration he also asked Daste and Silva questions about their travel plans. Specifically, he asked what they planned to do in Salt Lake, whether they knew anyone there, whether they had been there before and when they were planning to return. He also asked how much Daste paid for the car and whether either she or Silva were working. His questioning lasted about a minute.

¶9  Officer Callister then returned to Flores standing by his patrol car and issued him a warning for speeding. He returned Flores' driver's license, handed him all his papers and verified that he was "good to go." Officer Callister next asked Flores if he minded him asking a few more questions. Flores indicated he was agreeable to answering some questions, and Officer Callister questioned him further regarding his travel plans; specifically, he asked how they could be going to gamble in Salt Lake where there were no casinos.

¶10  Callister left Flores for a moment and approached the car to ask Daste and Silva similar questions about their plans to gamble. He returned to Flores and asked him whether he had any drugs in the car or on his person, specifically listing different drugs. Flores replied that he did not. When Officer Callister asked Flores if he could search the car, Flores replied that it was not his car but when Officer Callister asked if he could search his belongings, Flores said, "No problem with me."

4

¶11        After obtaining Flores' consent to search his possessions, Officer Callister returned to the car and informed Daste and Silva that he had issued Flores a warning and they were "good to go."  He then asked them if he could ask a few questions, they agreed, and in the course of his questioning they consented to a search of the car.  Officer Callister then had Flores, Daste and Silva read and sign a consent form, and he waited for backup to search the car.  A search of the vehicle produced 27.4 grams of methamphetamine hidden in the center console.  The traffic stop lasted approximately 12 minutes and concluded when Officer Callister issued Flores a warning.  The entire encounter from the time Officer Callister stopped the vehicle to the time he obtained consent to search the vehicle lasted approximately 20 minutes.

¶12        Silva argues he was illegally detained beyond the duration of the traffic stop because Officer Callister's questions improperly prolonged the stop.  Silva also claims the court erred in determining that (1) the stop ended when Officer Callister returned Flores' papers and issued a warning and (2) the subsequent questioning was a consensual encounter.  Below, Silva joined Flores' motion to suppress adopting all of Flores' arguments challenging the traffic stop and the resulting search.  Silva did not advance any arguments specific to his detention.  The court granted Silva's motion to join with respect to the traffic stop but denied his motion to join with respect to "any issues regarding whether Flores was seized or the encounter was consensual."

¶13        The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  *Terry v. Ohio*, 392 U.S. 1, 8 (1968).   "The protection against unreasonable seizures 'extend[s] to brief investigatory stops of persons or vehicles that fall short of traditional arrest.'"  *Teagle*, 217 Ariz. at 22, ¶ 20, 170 P.3d at 271 (quoting *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002)).

¶14        "[T]he violation of a traffic law provides sufficient grounds to stop a vehicle."  *State v. Acosta*, 166 Ariz. 254, 257, 801 P.2d 489, 492 (App. 1990); *see also Box*, 205 Ariz. at 497, ¶ 15, 73 P.3d at 628 (stating that traffic stop was not unreasonable seizure because it was justified by speeding); *State v. Orendain*, 185 Ariz. 348, 352, 916 P.2d 1064, 1068 (App. 1996) *overruled on other grounds*, *State v.Orendain*, 188 Ariz. 54, 932 P.2d 1325 (1997) (traffic stop of vehicle for following another vehicle too closely, in violation of traffic laws, was not unreasonable seizure).

¶15	During a valid traffic stop both the driver and the passengers are "seized" under the Fourth Amendment. *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). Any subjective motives of an officer do not invalidate an otherwise lawful traffic stop. *Whren v. United States*, 517 U.S. 806, 813 (1996).

¶16	An officer's questions during a traffic stop do not violate the Fourth Amendment so long as they do not unreasonably prolong the stop. *Teagle*, 217 Ariz. at 23, ¶ 24, 170 P.3d at 272 (citing *United States v. Olivera-Mendez*, 484 F.3d 505, 510-11 (8th Cir. 2007), for the proposition that "an officer does not violate the Fourth Amendment by asking a few questions about matters unrelated to the traffic violation, even if this conversation briefly extends the length of the determination"). Thus, an officer may ask questions directly related to the stop, such as requesting the defendant's driver's license and registration. *State v. Paredes*, 167 Ariz. 609, 611, 810 P.2d 607, 609 (1991). In addition, an officer may also ask for consent to search the defendant's vehicle or ask questions unrelated to the traffic stop. *See Ohio v. Robinette*, 519 U.S. 33 (1996) (consent to search was voluntary where defendant was stopped for speeding, officer gave a verbal warning and returned defendant's driver's license, and then asked defendant if he had any contraband or weapons in the car; defendant replied "no" and consented to search of the car); *Box*, 205 Ariz. at 498, ¶ 21, 73 P.3d at 629 (permissible for officer, after concluding traffic stop, to ask driver whether he carried drugs or money and ask permission to search the vehicle for drugs or money).

¶17	Generally, a traffic stop is over once the officer hands the driver his documents, issues a citation or warning, and informs the driver he is free to leave. *Teagle*, 217 Ariz. at 23, ¶ 23, 170 P.3d at 272; *Box*, 205 Ariz. at 498, ¶ 21, 73 P.3d at 629; *see also Brendlin v. California*, 551 U.S. 249, 255 (2007) (looking at whether in view of all circumstances surrounding the incident, a reasonable person would have felt free to leave).

¶18	During a consensual encounter, a police officer may, without reasonable suspicion of criminal activity, ask questions about a person's identity, request to see their identification, ask for consent to search their person, or ask for consent to search their belongings. *United States v. Drayton*, 536 U.S. 194, 200-01 (2002); *Florida v. Bostick*, 501 U.S. 429, 434, 437 (1991). A consensual encounter may become a seizure when, based upon the totality of the circumstances, a reasonable person would not have felt free to leave or otherwise terminate their encounter with the police. *Drayton*, 536 U.S. at 201; *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980). The standard for reasonableness is an objective one, and takes into

account that although "there is an element of psychological inducement when a representative of the police . . . initiates a conversation," this does not render every encounter with the police a seizure under the Fourth Amendment. *United States v. Ayon-Meza*, 177 F.3d 1130, 1133 (9th Cir. 1999).

¶19 Fourth Amendment rights cannot be asserted vicariously, and as a result, "a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993); *see also Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). A passenger has standing to object to a traffic stop but does not have standing to challenge any detention of the driver once the stop is over. *Rakas*, 439 U.S. at 133-34. A passenger with no possessory interest in the car, or reasonable expectation of privacy in the area searched has no standing to challenge the search. *United States v. Pulliam*, 405 F.3d 782, 786 (9th Cir. 2005); *Alderman v. United States*, 394 U.S. 165, 171-72 (1969) (stating that "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself").

¶20 Silva does not argue the initial stop was unconstitutional and we do not find it to be so. At the suppression hearing, Officer Callister's testimony that he conducted a traffic stop because Flores was exceeding the speed limit was uncontested.

¶21 Silva contends, however, that the court should have considered his challenge to any detention once the traffic stop ended. Once Officer Callister issued the warning, handed Flores his documents, and inquired whether he was "good to go," the traffic stop was over; Flores was free to leave. *See Box*, 205 Ariz. at 498, ¶ 21, 73 P.3d at 629 (stating that when the officer returned the driver's documents and handed him the warning he was fee to leave and the stop had ended). However, Officer Callister "was equally free to ask [Flores] additional questions unrelated to the traffic stop." *Teagle*, 217 Ariz. at 23, ¶ 23, 170 P.3d at 272 (quoting *Box*, 205 Ariz. at 498, ¶ 21, 73 P.3d at 629). Here, Flores consented to the officer's further questioning and ultimately to a search of the vehicle.

¶22 Even if we did not conclude that Flores consented to Officer Callister's further questioning, Silva cannot challenge the constitutionality of Flores' detention beyond the traffic stop. *Rakas*, 439 U.S. at 133-34.

7

Neither can he urge suppression of the methamphetamine in the car. At the suppression hearing Silva did not assert that he had a possessory interest in the car or any reasonable expectation of privacy in the center console. *See id.* at 148 (concluding that no "legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers"). Silva, "[a] person who is aggrieved . . . only through the introduction of damaging evidence secured by a search of a third person's premises or property[,] has not had any of his Fourth Amendment rights infringed." *Id.* at 134. The court correctly denied his motion to suppress.

II.     Motion for Mistrial

**¶23**          Silva argues the court denied his right to due process when it granted a mistrial for his co-defendant, Flores, but sent his case to the jury. Silva objected to the court's decision to grant Flores a mistrial and sever his case from Silva's after the close of the State's evidence. He argued he was prejudiced because it gave the appearance that the case against Flores was dismissed leaving Silva as the only culpable individual. The court did not see any prejudice to Silva and denied his motion for mistrial. Silva next requested a specific jury instruction explaining that Flores was no longer present for a legal reason; the court denied Silva's request to explain to the jury why Flores was no longer present. The court reasoned that doing so would draw improper attention to Flores' absence.

**¶24**          We review the denial of a motion for mistrial for an abuse of discretion. *Blackman*, 201 Ariz. at 538, ¶ 41, 38 P.3d at 1203. "A declaration of mistrial is the most dramatic remedy for trial error and is appropriate only when justice will be thwarted if the current jury is allowed to consider the case." *State v. Nordstrom*, 200 Ariz. 229, 250, ¶ 68, 25 P.3d 717, 738 (2001), *abrogated on other grounds by State v. Ferrero*, 229 Ariz. 239, 243, ¶ 20, 274 P.3d 509, 513 (2012).

**¶25**          The court did not abuse its discretion in denying Silva's motion. *State v. Cruz*, 137 Ariz. 541, 546, 672 P.2d 470, 475 (1983) (stating that ordering a severance and mistrial as to one co-defendant is an appropriate remedy for a *Bruton* violation). Silva argued the jury might infer from Flores' sudden absence that Flores was acquitted leaving Silva as the only guilty person. On appeal, Silva also argues the jury could have inferred that Flores pled guilty, and thereby have concluded that Silva was also guilty as an accomplice. However, Silva admits that the jury could have attributed Flores' sudden absence to illness or some other, non-prejudicial, condition.

**¶26** The many possible and competing inferences the jury could have made shows there was no prejudice to Silva. *See State v. Lamar*, 205 Ariz. 431, 439, 72 P.3d 831, 839 (2003) (finding no prejudice where tenuous link between claimed error and prejudicial inference by the jury). Further, the court properly instructed the jury regarding Flores' absence on two occasions.[3] *Id.* at 439, 72 P.3d at 839 (stating that curative instruction can overcome any probability that the jury would draw improper conclusions). Accordingly, we find no reversible error.

---

[3]

> The only determination for you now will be whether or not the State has proven the defendant Victor Silva is guilty beyond a reasonable doubt. You are not to speculate or guess as to why that is, and you're not to consider the reasons for that at all in making your deliberation – in your deliberations or making your decision.
>
> . . .
>
> The only matter for you to determine – for you to determine is whether the State has proved Victor Hugo Silva guilty beyond a reasonable doubt. The defendant's guilt or innocence is not affected by the fact that another person or persons might have participated or cooperated in the crime and are not on trial now. You should not guess about the reason any other person is absent from the courtroom.

**CONCLUSION**

¶27      For the above reasons, Silva's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: mjt