NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 31 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff-Appellee,<br><br>  v.<br><br>VICTOR ANTONIO GONZALEZ, Jr.,<br><br>                Defendant-Appellant. | No.   21-10010<br><br>D.C. No.<br>4:19-cr-01092-JGZ-BGM-4<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Argued and Submitted December 8, 2021
San Francisco, California

Before: GRABER and COLLINS, Circuit Judges, and CHOE-GROVES,[**] Judge.

Victor Antonio Gonzalez, Jr., pleaded guilty to conspiracy to smuggle

goods, 18 U.S.C. § 371, and smuggling goods, id. § 554(a). He appeals the district

court's denial of his motion to suppress ammunition that was discovered during a

search of his vehicle. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Jennifer Choe-Groves, Judge for the United States Court of International Trade, sitting by designation.

We review de novo the denial of the motion to suppress and the underlying factual findings for clear error.  United States v. Miranda-Guerena, 445 F.3d 1233, 1236 (9th Cir. 2006) (citation omitted).

Defendant was driving southbound with a passenger approximately fifty-eight miles from the Mexican border.  A trooper stopped Defendant at 1:10 PM because the vehicle's license plate was under mandatory insurance suspension in violation of the Arizona traffic code.  Defendant stated that he and his passenger were coming from Tucson back to Nogales.  When the trooper asked the passenger where he was coming from, he responded that he and Defendant were coming from Nogales and then stated that they were coming from Phoenix.  At some point, the trooper asked Defendant to accompany him back to the patrol car, while the trooper completed the paperwork.  As the trooper handed Defendant a written warning for the insurance violation, he asked Defendant again, and Defendant responded that they were coming from Phoenix.  At this point, the traffic stop had lasted five to ten minutes.  The trooper did not inform Defendant that he was free to leave, but Defendant turned to walk to his vehicle.

The trooper asked Defendant if he "could have a word with him to ask him a few questions," and Defendant agreed without hesitation.  Defendant consented to a vehicle search and signed a written consent form.  The trooper frisked Defendant and the passenger and directed them to stand 200 feet away while he searched the

2

vehicle. The trooper found 10,000 rounds of ammunition in the vehicle. The trooper walked Defendant and the passenger to the police vehicle and handcuffed them behind their backs. At approximately 1:30 PM, the trooper called a federal agent who was tasked to the Bureau of Alcohol, Tobacco, and Firearms (ATF), and two ATF agents arrived after fifteen or twenty minutes. Defendant agreed to speak with the ATF agents, who removed the handcuffs.

Defendant's consent to the search was "freely and voluntarily given" based on the "totality of all the circumstances." See Schneckloth v. Bustamonte, 412 U.S. 218, 222, 227 (1973) (citations omitted). After the end of the traffic stop, the justification for which Defendant does not challenge, Defendant consented to a vehicle search verbally and in writing. Defendant was not in custody, and under the facts as found by the district court, the trooper did not threaten Defendant, draw his gun, or use force to obtain consent. See United States v. Jones, 286 F.3d 1146, 1152 (9th Cir. 2002) (discussing the factors for determining whether consent was voluntary). Defendant testified that he initially refused to consent to a search and relented when the trooper said he would call for a search warrant or canine, but the magistrate judge found, and the district court judge agreed, that Defendant's testimony that he did not voluntarily sign the form was not credible. The trooper was not required to inform Defendant that he was "'free to go' [for] his consent to search [to] be recognized as voluntary." See Ohio v. Robinette, 519 U.S. 33, 35

3

(1996). The district court did not err in finding that Defendant consented voluntarily to the search.

Furthermore, the trooper acted reasonably when, before conducting the consensual search of the vehicle, he patted down Defendant and asked him to move away from the vehicle. Given that the trooper was outnumbered by Defendant and his passenger, would be unable to observe their movements while he conducted the search, and had received conflicting answers to basic questions, the trooper reasonably suspected that his safety might be in danger if he did not take these limited measures before conducting the consensual search. United States v. Orman, 486 F.3d 1170, 1176 (9th Cir. 2007).

The Terry detention after the search was objectively reasonable based on the facts available to the trooper at the time. Terry v. Ohio, 392 U.S. 1, 21–22 (1968). The trooper had reasonable suspicion that Defendant was committing a federal crime based on the uncommonly large amount of ammunition that he discovered in the vehicle, Defendant's and the passenger's conflicting statements about their prior whereabouts, and the fact that they were traveling southbound near the border with Mexico. It was reasonable for the trooper to handcuff Defendant until the federal agents arrived. See United States v. Hensley, 469 U.S. 221, 235 (1985) ("[The officers] were authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain the status quo during the course of the

4

stop.").  The duration of the detention after the search to allow for federal agents to arrive was reasonable.

**AFFIRMED.**